Karriem MUHAMMAD *v.* STATE of Arkansas

CR 99-31 988 S.W.2d 17

Supreme Court of Arkansas
Opinion delivered April 15, 1999

*Neil & Goodson*, by: *John C. Goodson*, for appellant.

*Mark Pryor*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellee.

L AVENSKI R. SMITH, Justice. This is a search and seizure case. It concerns the appropriateness of a police "pat-down" search of a driver stopped for a traffic violation who, though only given a warning citation, consents to the search of his vehicle. Appellant, Karriem Muhammad ("Muhammad"), appeals the denial of his motion to suppress evidence. Muhammad entered a conditional guilty plea to cocaine charges stemming from discovery of the controlled substance on his person as a result of the "pat-down" search. Muhammad contends that the trial court should have excluded evidence of the controlled substance because the police had no authority to perform the search in that there was no reasonable, articulable suspicion of criminal activity. We disagree and affirm.

*Facts*

On March 21, 1996, Arkansas State Trooper Jeffrey L. Thomas ("Thomas") stopped Muhammad's vehicle on Interstate 30 outside of Texarkana heading east towards Little Rock. Thomas initiated the stop after observing Muhammad following an eighteen-wheel tractor-trailer rig too closely. At the suppression hearing, Thomas testified that Muhammad, dressed in slacks

and a loose pullover knit shirt, was "nervous," "his lips were trembling," and he stood and sat very erect throughout the encounter. Thomas initially questioned Muhammad about where he was traveling, and Muhammad answered that he was going to Little Rock for his father's birthday. Thomas asked how old his father was, and Muhammad apparently was unable to give an exact age, although he responded that his father was "sixty something." Pursuant to standard police procedure, Thomas ran a check through the National Crime Information Computer ("NCIC") and the Interstate Identification Index on Muhammad's license and discovered that Muhammad was a convicted felon currently on parole. Muhammad's prior felonies included convictions for aggravated robbery and possession of illegal drugs.

After Thomas ran the search, he decided to give Muhammad a warning citation instead of a ticket. Thereafter, Thomas asked Muhammad to get into his cruiser to avoid the road noise and requested permission to search Muhammad's car. Thomas presented Muhammad with a consent form to complete to allow the search. Muhammad signed the form, thus giving his permission for the search. At the suppression hearing, Thomas testified that he based his decision to search the car on Muhammad's nervousness and his prior criminal history. Thomas specifically noted, however, that he did not have probable cause to search Muhammad's car, but that he thought he might find illegal drugs in the car. Thomas then called for back-up so that another Trooper would be present while he conducted the search.

While waiting for the back-up unit, Thomas directed Muhammad to step out of and to the front of Thomas's cruiser, and assume the position to be frisk-searched. Muhammad did so, and Thomas began a "pat-down" search of Muhammad's outer clothing. Upon reaching Muhammad's belt-line, Thomas felt the corner of some object which Thomas believed to be a firearm. Muhammad attempted to remove Thomas's hand from the object, and Thomas then ordered Muhammad to place his hands behind his head. Thomas retrieved the object, which appeared to be a brick of compressed material wrapped in duct tape. Later examination determined it to be illegal drugs. Thomas found no weapon.

On December 18, 1996, Muhammad filed a Motion to Suppress the evidence obtained in the "pat-down" search, contending that the search was unlawful. Miller County Circuit Court held a suppression hearing on September 9, 1997. Officer Thomas was the sole witness. At the conclusion of the hearing, the circuit judge denied Muhammad's motion to suppress, and Muhammad subsequently entered a conditional guilty plea pending the outcome of his appeal of the denial of his motion to suppress. The trial court entered a judgment and commitment order on September 15, 1997, sentencing Muhammad to forty years in prison, finding him guilty of manufacture, delivery and possession of a controlled substance. Muhammad appealed to the Arkansas Court of Appeals on October 15, 1997, and the appellate court affirmed the trial court's denial of the motion to suppress in an opinion on December 23, 1998. Thereafter, Muhammad petitioned this Court for review of the Court of Appeals' decision. We granted review. In his petition, Muhammad specifically argues that the Court of Appeals' decision is contrary to that court's and the Arkansas Supreme Court's prior decisions regarding "pat-down" searches during traffic stops.

*Standard of Review*

■ ■ On a Petition for Review, this Court reviews the case as if the appeal had originally been filed in this Court. *State v. Brunson*, 327 Ark. 567, 570, 940 S.W.2d 440 (1997); *Mullinax v. State*, 327 Ark. 41, 938 S.W.2d 801 (1997). On review of a trial court's denial of a motion to suppress, this Court makes an independent examination based on the totality of the circumstances, and will reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Burris v. State*, 330 Ark. 66, 71, 954 S.W.2d 209 (1997). In making that decision, the Court reviews the evidence in the light most favorable to the State. *Id.*

In his Petition for Review, Muhammad asserts that the Court of Appeals disregarded both its own and our holdings in *Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998), *Frette v. State*, 58 Ark. App. 81, 947 S.W.2d 15 (1997), and *Brunson v. State*, 54 Ark. App. 248, 925 S.W.2d 434 (1996). It should be

noted that both *Brunson* and *Frette*, which were reversed and remanded by the Court of Appeals, were reversed again by this Court upon the State's Petitions for Review, and the trial courts' decisions reinstated. As such, Muhammad's reliance on the holdings of those Court of Appeals decisions is misplaced.

This case involves the interaction of a few basic facts with several of our Arkansas Rules of Criminal Procedure, Arkansas case law and United States Supreme Court cases regarding the Fourth Amendment's protections against unlawful searches. There is no dispute in this case about the State Trooper's justification for pulling Muhammad over for following the tractor-trailer rig too closely. Clearly, Thomas had the authority to do so. See, *Burris, supra*, and *Whren v. United States*, 116 S.Ct. 1769 (1996). The crucial issue is whether, after Thomas issued the warning ticket, he had a sufficient basis to conduct the "pat-down" search consistent with the Fourth Amendment.

■ The Fourth Amendment of the United States Constitution guarantees that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. 4. This is a fundamental and precious right that the courts must protect. However, as the United States Supreme Court has indicated, this provision does not forbid all searches and seizures, but only "unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968), quoting *Elkins v. United States*, 364 U.S. 206, 222 (1960). In *Terry*, a police officer was patrolling downtown Cleveland, Ohio, when he came upon three men standing on a street corner. The officer testified that he watched the men for some time, and found their actions suspicious. As such, he approached the men on the street and began questioning them. When his inquiries were met with mumbled responses, the officer quickly spun Terry around and began a "pat-down" search of Terry's outside clothing, finding a revolver in a pocket. Ultimately, the officer found another gun on another man's person. He arrested the men after taking them to the station.

■ In analyzing the search in which the officer initially had no probable cause to arrest the defendants, the United States

Supreme Court noted that "a search of weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation." *Terry, supra,* 392 U.S. at 25-26. In making this statement, the Supreme Court upheld the lawfulness of the search based on the need to allow an officer to search a person if the officer reasonably fears that the suspect is armed and dangerous, and such a search is necessary to protect himself and others. The standard used to determine reasonableness in such a situation is "whether a reasonable prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.,* 392 U.S. at 27. In making such a determination, the *Terry* court noted that "specific reasonable inferences" drawn from the facts in light of the officer's experience may be used; however, "inchoate and unparticularized suspicion or 'hunch'" will not suffice. *Id.*

Since *Terry,* the Arkansas Legislature has enacted statutes and this Court has promulgated rules enforcing *Terry's* teachings to create a working web of flexible responses for stop and search situations in this state. The starting point for this analysis is two Arkansas Rules of Criminal Procedure, Rule 3.1 and Rule 3.4. Rule 3.1 details two situations when a police officer may stop and detain a person who he "reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property. . . ."[1] In connection with Rule 3.1, Rule 3.4 allows that officer to conduct a search of the detained person's outside clothing, a "pat-down" search, for "any

---

[1] The full text of Rule 3.1 appears as follows:

**RULE 3.1. Stopping and Detention of Person: Time Limit.**

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

weapon or other dangerous thing which may be used against the officer or others."[2] Such a search may only be conducted if the officer "reasonably suspects that the person is armed and presently dangerous to the officer or others." Ark. R. Crim. P. 3.4. "Reasonable suspicion" is defined in Rule 2.1 as:

> [A] suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

Ark. R. Crim. P. 2.1; *See also*, Ark. Code Ann. § 16-81-202 (1987). The Arkansas Legislature has codified factors to be considered when determining whether an officer has grounds to "reasonably suspect" a person who has been detained pursuant to Rule 3.1. These grounds include, but are not limited to, the following:

(1) The demeanor of the suspect;

(2) The gait and manner of the suspect;

(3) Any knowledge the officer may have of the suspect's background or character;

(4) Whether the suspect is carrying anything, and what he is carrying;

(5) The manner in which the suspect is dressed, including bulges in clothing, when considered in light of all of the other factors;

(6) The time of the day or night the suspect is observed;

(7) Any overheard conversation of the suspect;

---

[2] The full text of Rule 3.4 appears as follows:

**RULE 3.4. Search for Weapons.**

If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others.

(8) The particular streets and areas involved;

(9) Any information received from third persons, whether they are known or unknown;

(10) Whether the suspect is consorting with others whose conduct is "reasonably suspect";

(11) The suspect's proximity to known criminal conduct;

(12) Incidence of crime in the immediate neighborhood;

(13) The suspect's apparent effort to conceal an article;

(14) Apparent effort of the suspect to avoid identification or confrontation by the police.

Ark. Code Ann. § 16-81-203 (1987).

 It should first be noted that a search under Rule 3.4 cannot be lawfully undertaken unless justification for detaining the suspect exists under Rule 3.1. In part, Muhammad argues that after he was given a warning citation, the reason for the stop ended and, unless another situation arose under Rule 3.1, he should have been allowed to leave. Instead, Thomas asked to search his car, and Muhammad agreed, thus extending the amount of time he was allowed to be lawfully detained by his own permission. Had Muhammad refused to allow the search of the car, he should have been released since Thomas himself admitted he did not have probable cause to search. However, to Muhammad's own detriment, he extended the stop by authorizing the search. *See, U.S. v. Beatty*, 1999 WL 124071 (8th Cir. 1999).

 Once Muhammad gave Thomas consent to search his automobile, the attendant circumstances changed significantly. Most notably, the officer's concern for his physical safety justifiably rose as he prepared to devote his attention to the search of the vehicle and not to the suspect's conduct. Thomas's concern for his safety was evident from his testimony at the hearing. In particular, Thomas testified to the following:

PROSECUTOR: In regard to your NCIC Triple I—that Triple I, is that interstate identification index, is that what that is?

THOMAS: Yes, it is.

PROSECUTOR: In regard to that did you ever receive a
 response?

THOMAS: Yes, I did.

PROSECUTOR: Who did that response come from?

THOMAS: Yes, I received a positive response from
 the terminal via the radio dispatcher at
 Hope headquarters a positive acknowl-
 edgment that there was a history that
 existed.

PROSECUTOR: They apprised you of this history?

THOMAS: Yes, they did.

PROSECUTOR: You were advised of what?

THOMAS: I was advised by the dispatcher a previous
 sale or possession of dangerous drug,
 arrest, and also at least one arrest of aggra-
 vated robbery.

 ***

PROSECUTOR: On this date when you got ready to search
 Mr. Muhammad's vehicle were you
 attended by other officers, or who was
 there with you and Mr. Muhammad?

THOMAS: At the time I was going to search the
 vehicle there was no one there but Mr.
 Muhammad and I.

PROSECUTOR: What happened next?

THOMAS: O.k., I called for another officer to come to the scene to back me up while I did the search of the vehicle. O.k., while waiting for this officer to arrive I asked Mr. Muhammad to step back out of my unit. We walked over to the right front fender of my unit and for my safety and for the things that I had gotten back on the positive response, being a previous drug conviction, an aggravated robbery conviction, and from the nervousness that he was displaying to me I asked Mr. Muhammad to put his hands on the hood of my cruiser and to spread his legs back and I began to pat him down for a weapon.

\*\*\*

DEFENSE COUNSEL: Really, you were looking for weapons, is that right?

THOMAS: That is correct.

DEFENSE COUNSEL: Didn't think you were going to find any drugs on him, did you?

THOMAS: Not on his person.

DEFENSE COUNSEL: Did you suspect that the person would be armed?

THOMAS: Yes, based on the information that I had I highly suspected that he may be armed.

\*\*\*

THOMAS: My search was based on the information that was available to me by his demeanor and the pat down was conducted solely for officer's safety a the point I began to pat down.

Rule 3.4 requires that Thomas reasonably suspect that Muhammad was armed, and that he was "presently dangerous" to Thomas or others. Given the officer's knowledge of appellant's criminal record which included aggravated robbery and illegal drug

charges, appellant's persistent nervousness, and manner of dress, it was reasonable to "*Terry*-frisk" Muhammad for safety reasons.

 ■ In *Stewart, supra*, the case Muhammad claims the Court of Appeals incorrectly ignored, a police officer approached the appellant who was standing on a street corner at 1:45 a.m. in a high-crime area. The officer asked the appellant to remove her hands from her coat pocket, but the appellant placed her hands in her pockets several times. The officer then performed a "pat-down" search and found drugs in appellant's pockets. This Court, upon appellant's petition for review from the Court of Appeals' affirmation of the trial court's denial to suppress the evidence, reversed and remanded finding that the officer had no reasonable suspicion to stop and question appellant under Rule 3.2 or Rule 2.2. While these rules are not the rules used by Thomas to justify the search in the present case, Muhammad apparently relies on *Stewart's* holding for the proposition that once Thomas issued the warning citation for the traffic offense, he no longer had any right to request to search Muhammad's vehicle nor any right to perform a "pat-down" search because the reason for the initial stop had ended. Neither we nor the United States Supreme Court have ever held that probable cause or reasonable suspicion is necessary in order for an officer to request consent for a search. Appellant gave consent for the search, thus authorizing his further detention.

 This Court's decision in *Shaver v. State*, 332 Ark. 13, 963 S.W.2d 598 (1998), is more on point, however. In *Shaver*, the appellant was a passenger in another man's car, and they were speeding. When they were pulled over, the officers noticed leather straps in the car next to the appellant, who had a tee-shirt on his lap. When the officers questioned the driver about the existence of weapons in the car, the driver verified that the appellant had two guns. The officers then proceeded to frisk the appellant, finding instead bags of illegal drugs in his pockets. In upholding the search and the admission of the contraband drugs, this Court found that the drugs were admissible because the officers had a justifiable fear of danger based on the knowledge of the guns already found and based on the fact that appellant had a "big bulge" in one of his pockets.

In *Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997), we upheld a denial of a motion to suppress where a police officer lawfully pulled over Burris for a traffic violation, and the officer ultimately discovered drugs and a weapon in the car. Burris was pulled over by a police officer because his trailer's license plate could not be read, and he had a brake light out. The officer testified that upon questioning Burris, Burris seemed unusually nervous and he would not make eye contact. Upon running a routine search of Burris's license, the officer learned that Burris had previously been arrested for weapons and drug charges, and convicted of a misdemeanor drug charge. Despite this information, Burris denied ever being arrested for anything other than speeding. The officer testified that he then became concerned for his safety and asked Burris whether he had any weapons. Burris first denied this, but then told the officer that he had a gun in the front of the car. Upon retrieving the gun, the officer arrested Burris and then conducted a search of the car, finding illegal drugs. On appeal, Burris contended that the officer arrested him and searched him merely because he had a criminal record in violation of Ark. Code Ann. § 16-81-201(1) (1987) which specifically precludes an officer from stopping and searching a passerby merely because he has a criminal record. We disregarded this argument because Burris's car was searched only after he admitted having a weapon in the car, and the search occurred after Burris was arrested.

In conclusion, we hold that the trooper Thomas's search of appellant after appellant's consent to a vehicle search was reasonable given the totality of the circumstances, which included the changed nature of the stop once a search was authorized, appellant's persistent nervousness, unusual posture, manner of dress, and criminal record that included illegal narcotics and aggravated robbery.

Affirmed.