Michael Ray POTTER *v.* STATE of Arkansas

CA CR 99-1248                                   20 S.W.3d 454

Court of Appeals of Arkansas
Divisions IV and I
Opinion delivered July 5, 2000

George B. Morton, for appellant.

Mark Pryor, Att'y Gen., by: C. Joseph Cordi, Jr., for appellee.

JOHN B. ROBBINS, Chief Judge.   Appellant Michael Ray Potter entered a conditional plea of guilty to possession of methamphetamine pursuant to Rule 24.3(b) of the Arkansas Rules of Criminal Procedure.   Mr. Potter was sentenced to three years' probation, twenty weekends in the Washington County jail, and ordered to pay $900.00 in restitution and costs and complete a thirty-day non-residential drug treatment program.   He now appeals, arguing that the trial court erred in denying his motion to suppress evidence. We agree, and we reverse and remand.

At the suppression hearing, Officer Charles Edward Motsinger testified that, on May 24, 1999, he was dispatched to a picnic area in response to a call from a woman who called to report that she thought she was being followed.   Officer Motsinger was provided a description of the vehicles of the complainant and the suspect, Mr. Potter, and was given the license number of Mr. Potter's truck. Upon arriving at the scene, Officer Motsinger parked his patrol unit behind Mr. Potter's truck.

After parking his car, Officer Motsinger noticed that Mr. Potter kept turning around and looking at him through the back window of his truck.   The officer got out of his car to approach, at which time Mr. Potter exited the truck and was asked to return to his vehicle.   Mr. Potter did as he was told and began fumbling around with something in the seat.   Unaware of what appellant was doing, Officer Motsinger drew his weapon and, upon engaging in conversation with the appellant, he noticed that appellant's mouth was dry, which he stated was an indication of methamphetamine

use. Officer Motsinger became nervous when Mr. Potter reached behind the seat to get his wallet. He then instructed Mr. Potter to place his hands on the steering wheel, and he returned to his patrol car to call for backup.

When the backup arrived, Officer Motsinger ordered appellant away from his vehicle and began to question him about the woman's complaint. Mr. Potter denied knowing the woman, and as the interrogation continued, he was told to place his hands on his truck for a pat down "for weapons and what not due to the fact that he was so nervous and the nature of the call." During the pat down, Officer Motsinger "hit one of appellant's pockets," at which time Mr. Potter said, "You might as well go ahead and take me to jail." Officer Motsinger felt something in the pocket, but was unable to identify it. When he pulled it out, he found a plastic baggie containing contraband that included a small amount of methamphetamine. Officer Motsinger then arrested Mr. Potter, put him in the patrol car, and interviewed the complainant. She indicated that appellant had been following her for several days, that he followed her to the park where she was eating lunch, but that she did not want to press charges or make a report.

Mr. Potter argues that evidence of the methamphetamine should have been suppressed because it was seized in violation of his Fourth Amendment protection against unreasonable searches and seizures. For this proposition, he raises two specific arguments. First, he contends that the police had no right to detain him because there was no reasonable suspicion that he had committed a crime of violence. Next, he argues that the pat-down search was illegal because it was conducted without reasonable suspicion that he was armed.

Rule 3.1 of the Arkansas Rules of Criminal Procedure provides:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require

the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

Mr. Potter contends that Officer Motsinger did not have the authority to stop and detain him because he had no reasonable suspicion that he had committed, or was about to commit, a felony or a misdemeanor involving danger of forcible injury to persons or damage to property. Officer Motsinger testified that he was investigating either stalking or harassment. Mr. Potter acknowledges that stalking is a felony, but submits that the officer could not have reasonably suspected the commission of that offense because there was no evidence that any threat was actually made or that there was even an accusation that a threat was ever made, and stalking requires "a terroristic threat with the intent of placing that person in imminent fear of death or serious bodily injury[.]" *See* Ark. Code Ann. § 5-71-229(a)(1) & (b)(1) (Repl. 1997). Thus, Mr. Potter asserts, the only crime that he reasonably could have been suspected to have committed was harassment. Pursuant to Ark. Code Ann. § 5-71-208(b) (Repl. 1997), harassment is a misdemeanor, and since Officer Motsinger had no reason to believe the complainant was in any danger of injury, Mr. Potter argues that suspicion of this offense did not give the officer the right to stop and detain him.

Alternatively, Mr. Potter contends that, even if he was lawfully detained under Rule 3.1, the pat-down search was not authorized under Rule 3.4, which provides:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others.

When asked what he was searching for at the scene of the detention, Officer Motsinger testified, "A weapon, that's what mostly I was looking for, a weapon, trying to find out what he was doing there." Mr. Potter asserts that the search was in reality an attempt to

find out "what he was doing" and not a legitimate search for weapons. Under the totality of the circumstances, Mr. Potter argues that the search was illegal because any suspicion that he was armed and dangerous was not based on objective, specific, and articulable facts.

■■ In reviewing a ruling denying a defendant's motion to suppress, we make an independent determination based upon the totality of the circumstances and view the evidence in the light most favorable to the State. *Green v. State*, 334 Ark. 484, 978 S.W.2d 300 (1998). We reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Id.* We agree that the officer lacked reasonable suspicion to stop and detain appellant, and hold that the trial court's failure to grant appellant's motion to suppress was clearly against the preponderance of the evidence.

The State does not dispute the fact that Officer Motsinger did not have reasonable suspicion that a felony or a misdemeanor involving danger of injury or property damage had been or was about to be committed. Nonetheless, the State argues that this was not necessary and cites several cases in which our supreme court indicated that a stop is legal if the officer reasonably suspects that the defendant is engaged in *any* criminal activity. (Emphasis ours.) *See Johnson v. State*, 333 Ark. 673, 972 S.W.2d 935 (1998); *Kilpatrick v. State*, 322 Ark. 728, 912 S.W.2d 917 (1995); *Hill v. State*, 275 Ark. 71, 628 S.W.2d 285 (1982). However, we disagree with the State's interpretation of the holdings in those cases. In each of the above cases, the appellant was being investigated for a felony, and given that such crimes are specifically covered by Rule 3.1, the point now being raised was not presented to or addressed by the supreme court. Although the court, in *Kilpatrick v. State, supra*, stated that the justification for a stop depends on whether the police have "specific, particularized and articulable reasons indicating the person or vehicle may be involved in criminal activity," in that case the police were investigating cocaine dealing, and the "criminal activity" referenced by the court was clearly an offense encompassed by Rule 3.1; the pertinent argument raised and rejected was that the information supplied by an informant about the drug-dealing was not sufficiently reliable.

The State also cites *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998), but the precedent set in that case weighs in

favor of appellant. In that case, the primary issue was whether the police had the authority under Rule 3.1 to order the occupant of a parked tractor-trailer out of his vehicle, when the officer suspected the occupant to be intoxicated based solely on a tip from an identified citizen informant. The supreme court held that the stop was justified, and announced:

> Before turning to the analysis in the present case, we would be remiss in not first emphasizing the significant policy considerations present where a tip reports a driver who is drinking. This court has previously recognized the magnitude of the State's interest in eliminating drunk driving in comparison to relatively minimal intrusions on motorists. *See Mullinax v. State*, 327 Ark. 41, 938 S.W.2d 801 (1997). In balancing the rights of a motorist to be free from unreasonable intrusions and the State's interest in protecting the public from unreasonable danger, one court has stated that "[a] motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible .... The 'totality' of circumstances tips the balance in favor of public safety and lessens the ... requirements of reliability and corroboration." *Mulcahy, supra*, (quoting *State v. Tucker*, 878 P.2d 855 (Kan. Ct. App. 1994)).

*Frette v. City of Springdale*, 331 Ark. at 120–21, 959 S.W.2d at 743. It is undisputed that driving while intoxicated constitutes a misdemeanor involving danger of injury to persons, and the supreme court found this significant in arriving at its decision.

Similarly, in *Wright v. State*, 327 Ark. 558, 940 S.W.2d 432 (1997), the supreme court's analysis of whether a stop was legal was based not on whether there was reasonable suspicion of any criminal activity, but whether the criminal activity was covered by Rule 3.1. The court stated:

> We would also point out that Ark. Crim. P. 3.1 provides that a law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person whom he reasonably suspects is committing, has committed, or is about to commit a felony or misdemeanor involving danger of forcible injury to persons. While this court has not been called upon to decide if a possible DWI offense falls within the language of Rule 3.1, our Court of Appeals has held, and we believe correctly, that a DWI violation carries with it the danger of forcible injury to others. *See Nottingham v. State*, 29 Ark. App. 95, 778 S.W.2d 629 (1989).

*Id.* at 562-63, 940 S.W.2d at 434. The court of appeals, when determining when a stop is authorized under Rule 3.1, also considers the types of crimes contemplated by the rule, and not merely whether there was reasonable suspicion of any kind of criminal activity. *See Coffman v. State*, 26 Ark. App. 45, 759 S.W.2d 573 (1988); *Van Patten v. State*, 16 Ark. App. 83 (1985).

██ ██ Rule 3.1 clearly provides for investigative stops for a particular set of crimes, and neither the supreme court nor this court has extended the plain wording of the rule to encompass an officer's suspicion of any crime. In the instant case, the arresting officer conducted the stop without reasonable suspicion that appellant was involved in any criminal activity covered by the rule,[1] and therefore we must reverse the trial court's denial of appellant's motion to suppress the illegally obtained contraband.

Because we find the stop to be illegal for noncompliance with Rule 3.1, we find it unnecessary to address whether or not the patdown search was authorized by Rule 3.4.

Reversed and remanded.

BIRD, STROUD, and GRIFFEN, JJ., agree.

JENNINGS and MEADS, JJ., dissent.

MARGARET MEADS, Judge, dissenting. I believe that the law-enforcement officer in this case had reasonable suspicion to stop and detain appellant, as well as reasonable suspicion to frisk him. I would affirm.

Officer Motsinger was dispatched to Tyson Park on May 24, 1999, after a woman used her cellular phone to notify police that a man had been following her for about three weeks and that she believed he was stalking her. She identified herself, described both her car and the man's truck, and provided the truck's license num-

---

[1] The dissenting opinion recites that the woman who called in the complaint about appellant felt she was being stalked and was afraid. Officer Motsinger, however, testified on cross-examination that when he was dispatched to the scene of appellant's stop and arrest, the dispatcher did not relay to him any allegation that the appellant had approached, contacted, or threatened the complainant. Nor was there any indication to Officer Motsinger that the woman was afraid of appellant, but rather was only concerned that she was being followed. As noted above, the felony offense of stalking requires "a terroristic threat." Ark. Code Ann. § 5-71-229.

ber. Upon arriving at the park, Officer Motsinger observed appellant's truck parked seventy feet from the woman's car; he parked behind the truck and noticed that appellant repeatedly turned around and looked at him through the truck's rear window. The officer then got out of his vehicle and approached appellant's truck.

Appellant contends he was detained in violation of Ark. R. Crim. P. 3.1, because the officer lacked "reasonable suspicion that he had committed a crime of violence." I disagree. Rule 3.1 permits a law enforcement officer to "stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons . . . if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct." Rule 2.1 of the Arkansas Rules of Criminal Procedure defines a reasonable suspicion as:

> [A] suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

With the facts before him, I believe that Officer Motsinger, at the time he approached appellant, reasonably suspected that appellant was stalking the complainant. His knowledge, at the time of his approach, was that a woman lodged a complaint that appellant was following her; she felt she was being stalked; she was afraid; she reported her location and her vehicle's license number; she described appellant's vehicle, its license number and present location; and both vehicles were indeed in the park, a short distance from each other. This, in my view, is enough to satisfy the requirement of reasonable suspicion. It was not necessary, at that point in time, that the officer have probable cause to arrest appellant for stalking, which is a felony. Ark. Code. Ann. § 5-71-229 (Repl. 1997). All that was required was the officer's reasonable suspicion, and the woman's call provided the foundation for that. An officer's reasonable suspicion may be based on reports made by people who witness criminal activity, particularly when they identify themselves and the officer's own observations corroborate at least some of the information provided by the person. *See, e.g., Frette v. City of Spr-*

*ingdale*, 331 Ark. 103, 121, 959 S.W.2d 734, 743 (1998). Moreover, the test for reasonable cause depends upon the collective information of police officers, and not solely on the knowledge of the officer stopping the vehicle. *Willett v. State*, 298 Ark. 588, 592, 769 S.W.2d 744, 746 (1989); *Roark v. State*, 46 Ark. App. 49, 53-54, 876 S.W.2d 596, 598 (1994).

I also believe the officer's pat-down search of appellant was justified. As soon as Officer Motsinger got out of his vehicle and began to approach appellant's truck, appellant got out of his truck and began walking toward Motsinger, who ordered him back into the truck. As appellant returned to his truck, he began fumbling with something in the seat while looking back at the officer. Uncertain as to appellant's movements, Officer Motsinger drew his weapon and ordered appellant to step back into the truck, which he did. Appellant then started to reach behind the truck seat, and Officer Motsinger instructed appellant to place his hands on the steering wheel. Officer Motsinger described appellant as "very, very nervous" and "jittery." Once back-up arrived, Officer Motsinger ordered appellant out of his vehicle, conducted a pat-down search, and discovered the plastic baggie containing methamphetamine.

Appellant contends the pat-down search was illegal because it was conducted without reasonable suspicion that he was armed, and thus was in violation of Ark. R. Crim. P. 3.4. This rule provides:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall this search be more extensive than is reasonable necessary to ensure the safety of the officer or others.

An officer need not be absolutely certain that an individual is armed before conducting a frisk; however, he must have a reasonable belief that his safety or the safety of others is at stake. *Pettigrew v. State*, 64 Ark. App. 339, 984 S.W.2d 72 (1998) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The essential question is whether a reasonably prudent person in the officer's position would be warranted in believing that the safety of the officer or others was in danger; the

officer's reasonable belief that the suspect is dangerous must be based on "specific and articulable facts." *Id.* A suspect's demeanor, manner, and furtive movements may be considered when determining whether the officer's suspicion was reasonable. *See, e.g. Muhammad v. State*, 64 Ark. App. 352, 356, 984 S.W.2d 822, 824 (1998), *aff'd* 337 Ark. 291, 988 S.W.2d 17 (1999).

Officer Motsinger testified that appellant was very, very nervous and jittery, that he kept turning around and watching him, that he fumbled around with something in the truck seat after being ordered back inside the truck, and that he reached behind the seat. I believe appellant's demeanor, manner, and furtive movements, as described by Officer Motsinger, are sufficient to warrant the officer's concern for his safety, and that a reasonably prudent person in the officer's position would have had the same concern. Thus, there was reasonable suspicion that appellant was armed, and the pat-down search of his person was not unlawful.

On review of a trial court's motion to suppress, we make an independent examination based on the totality of the circumstances and reverse only if the trial court's ruling was clearly against the preponderance of the evidence, and we review the evidence in the light most favorable to the State. *Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999). Applying this standard of review, I would affirm.

JOHN E. JENNINGS, Judge, dissenting. I agree with Judge Meads that the circuit judge did not err in denying the motion to suppress and I agree with much of her dissent. I cannot conclude, however, that Rule 3.1 was complied with and therefore dissent on alternate grounds. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Court said:

> The exclusionary rule has its limitations, however, as a tool of judicial control. It cannot properly be invoked to exclude the products of legitimate police investigative techniques on the ground that much conduct which is closely similar involves unwarranted intrusions upon constitutional protections. Moreover, in some contexts the rule is ineffective as a deterrent. Street encounters between citizens and police officers are incredibly rich in diversity.... Moreover, hostile confrontations are not all of a piece. Some of them begin in a friendly enough manner, only to take a different turn upon the injection of some unexpected ele-

ment into the conversation. Encounters are initiated by the police for a wide variety of purposes, some of which are wholly unrelated to a desire to prosecute for crime.

*Terry*, 392 U.S. at 13. The test under the Fourth Amendment of the United States Constitution is whether the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate. *Terry*, 392 U.S. at 22. The *Terry* Court said:

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Terry*, 392 U.S. at 24.

The *Terry* Court said that "no judicial opinion can comprehend the protean variety of the street encounter...," but our rules of criminal procedure classify these encounters into two types.

Assuming that the majority is correct in determining that there was a violation of Rule 3.1 it does not necessarily follow that the evidence must be suppressed. Rule 16.2(e) provides:

> (e) *Determination.* A motion to suppress evidence shall be granted only if the court finds that the violation upon which it is based was substantial, or if otherwise required by the Constitution of the United States or of this state. In determining whether a violation is substantial the court shall consider all the circumstances, including:
>
> (i) the importance of the particular interest violated;
>
> (ii) the extent of deviation from lawful conduct;
>
> (iii) the extent to which the violation was willful;
>
> (iv) the extent to which privacy was invaded;
>
> (v) the extent to which exclusion will tend to prevent violations of these rules;
>
> (vi) whether, but for the violation, such evidence would have been discovered; and

(vii) the extent to which the violation prejudiced moving party's ability to support his motion, or to defend himself in the proceedings in which such evidence is sought to be offered in evidence against him.

It is significant that this was not a vehicle stop — the defendant was already stopped when the officer approached. When the defendant got out of his car and approached the officer, the officer was certainly within his rights to ask him to return to his vehicle. When the officer subsequently ordered him out of the vehicle the defendant was "stopped" within the meaning of Rule 3.1. After considering the factors listed in Rule 16.2, I cannot agree that the violation was "substantial." The officer's subsequent decision to pat down the defendant seems to me to have been reasonable under the circumstances.

For these reasons I cannot say that the circuit judge's decision to deny the motion to suppress was error.