Michael Ray POTTER *v.* STATE of Arkansas

CR 00-860

30 S.W.3d 701

Supreme Court of Arkansas
Opinion delivered November 9, 2000

*George B. Morton,* for appellant.

*Mark Pryor,* Att'y Gen., by: *C. Joseph Cordi, Jr.,* Ass't Att'y Gen., for appellee.

RAY THORNTON, Justice. The fundamental issue in this case is whether Officer Charles Edward Motsinger had reasonable suspicion of criminal activity sufficient to conduct an investigative stop and frisk consistent with the Fourth Amendment of the United States Constitution and also consistent with the provisions of applicable Arkansas Rules of Criminal Procedure. The stop and frisk of Michael Ray Potter produced a plastic bag containing marijuana and methamphetamine and paraphernalia. Potter entered a conditional plea of guilt after the trial court declined Potter's motion to suppress the evidence. Potter then appealed the conviction and sentence based upon his conditional plea of guilty, contending that there was no reasonable suspicion of criminal activity to support an investigative stop and frisk. In a 4–2 decision, the court of appeals reversed the findings of the trial court and ordered the evidence suppressed. *See Potter v. State,* 70 Ark. App. 495, 20 S.W.3d 454 (2000). Because the Fourth Amendment rights against unreasonable searches and seizures are not identical to the protections against unreasonable searches and seizures expressed in Arkansas's statutes and Rules of Criminal Procedures, and because the interpretation of our rules should be clarified, we granted the petition for review as requested by the State.

In his argument to the court of appeals, appellant argued that harassment was the only crime for which there was reasonable suspicion and that harassment without the threat of physical harm does not meet the criteria of Ark. R. Crim. P. 3.1 and 3.4. In response, the State asked that the trial court's order be affirmed. In specific response to appellant's argument, the State contended that our Rules 3.1 and 3.4 should be interpreted to be identical to the criteria established by *Terry, supra* with respect to unreasonable searches and seizures. The court of appeals limited its decision to the question whether reasonable suspicion of a nonviolent misdemeanor would justify a stop and frisk under our Rule 3.1. While we do not review the court of appeal's decision, we note that the court of appeals ruled in favor of appellant without a careful analysis and review of the trial court's findings that there existed a reasona-

ble suspicion of both the felony offense of stalking and the misdemeanor offense of harassment.

■■ On a petition for review, we review the case as if the appeal had been originally filed in this court. *State v. Brunson*, 327 Ark. 567, 940 S.W.2d 440 (1997). In reviewing a trial court's ruling on a motion to suppress, we make an independent examination based on the totality of the circumstances and reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999). We review the evidence in the light most favorable to the State. *Id*. Based upon our review of the totality of the circumstances of this case, we conclude that the trial court's denial of Potter's motion to suppress should be affirmed.

■ Potter claims that the trial court erred in denying his motion to suppress because the stop was not authorized by Rule 3.1 of the Arkansas Rules of Criminal Procedure and because the frisk was not authorized by Rule 3.4 of the Arkansas Rules of Criminal Procedure. We first address the question whether Officer Motsinger had reasonable suspicion to conduct an investigative stop consistent with the Fourth Amendment of the United States Constitution. The Fourth Amendment guarantees that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. 4. This is a fundamental right that the courts must protect. However, as the Supreme Court has indicated, this provision does not forbid all searches and seizures, but only "unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1 (1968).

■ The Court noted that "a search of weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation." *Terry, supra*. In making this statement, the Court upheld the lawfulness of the search based on the need to allow an officer to search a person if the officer reasonably fears that the suspect is armed and dangerous, and such a search is necessary to protect himself and others. The standard used to determine reasonableness in such a situation is "whether a reasonable prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id*. In making such a determination, the *Terry* court noted that "specific reasonable inferences" drawn from the facts in

light of the officer's experience may be used; however, an "inchoate and unparticularized suspicion or 'hunch'" will not suffice. *Id.*

■ We address the question whether the stop and frisk violated the standards in effect in our state. Since *Terry*, the Arkansas Legislature has enacted statutes and we have promulgated rules establishing somewhat more rigorous standards than those articulated in *Terry* for stop and search situations. Arkansas Rules of Criminal Procedure 3.1 provides:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who[m] he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonable necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. . . [.]

*Id.* This rule requires a reasonable suspicion that a felony or serious misdemeanor has been committed or is about to be committed.

■ Our first inquiry is whether the trial court erred in finding that Officer Motsinger was justified in making a stop based upon a reasonable suspicion that Potter was committing, had committed, or was about to commit the felony of stalking, or a misdemeanor involving a danger of personal injury or the appropriation or damage to property. Our rules provide that an investigatory stop may be made upon a reasonable suspicion which need not rise to the level required to establish probable cause for an arrest. "Reasonable suspicion" is defined as:

> [A] suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

Ark. R. Crim. P. 2.1.

■ The Arkansas legislature has codified factors to be considered when determining whether an officer has grounds to "reasonably suspect" a person is subject to detention pursuant to Rule 3.1. These grounds include, but are not limited to, the following:

(1) The demeanor of the suspect;

(2) The gait and manner of the suspect;

(3) Any knowledge the officer may have of the suspect's background or character;

(4) Whether the suspect is carrying anything, and what he is carrying;

(5) The manner in which the suspect is dressed, including bulges in clothing, when considered in light of all of the other factors;

(6) The time of the day or night the suspect is observed;

(7) Any overheard conversation of the suspect;

(8) The particular streets and areas involved;

(9) Any information received from third persons, whether they are known or unknown;

(10) Whether the suspect is consorting with others whose conduct is "reasonably suspect";

(11) The suspect's proximity to known criminal conduct;

(12) Incidence of crime in the immediate neighborhood;

(13) The suspect's apparent effort to conceal an article;

(14) Apparent effort of the suspect to avoid identification or confrontation by the police.

Ark. Code Ann. § 16-81-203 (1987).

■ These procedural rules are to be examined in light of the totality of the circumstances. *See Muhammad, supra.* We have used various terms to describe how much cause or suspicion is necessary or reasonable in order to stop a person. *Hill v. State,* 275 Ark. 71, 628 S.W.2d 285 (1982). The justification for the investigative stops depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person or vehicle may be involved in prohibited criminal activity. *Id. See also Frette v. State,* 331 Ark. 103, 959 S.W.2d 734 (1998); *Kilpatrick v. State,* 322 Ark. 728, 912 S.W.2d 917 (1995).

We review the facts to determine whether Officer Motsinger had a reasonable suspicion as required by Rule 3.1 to justify an investigatory stop. Officer Motsinger testified that on May 24, 1999, he was dispatched to a picnic area in Tyson Park in response to a call to the police from a woman who reported that she thought she was being followed by a man who allegedly had been following her for three weeks. She also reported that she believed he was stalking her. At the time of her call, the woman identified herself and her vehicle, described Potter's vehicle, gave Potter's license number, and informed the dispatcher of her location. When Officer Motsinger responded to the call and arrived at the park, he confirmed the elements of the woman's report. The woman's car was in the park, and Potter's truck was parked approximately seventy feet from the woman's car. As Officer Motsinger pulled into the area and stopped behind Potter's truck, he noticed Potter's furtive movement of repeatedly looking at him through the truck's back window. When Officer Motsinger got out of his patrol car to approach the truck, Potter exited his truck and moved in the direction of the officer. Officer Motsinger asked Potter to return to his vehicle, and, in doing so, Potter fumbled for something in the seat. At this point, Officer Motsinger drew his weapon, and called for a backup officer.

■ Arkansas Rule of Criminal Procedure 3.1 provides that an officer may stop and detain any person who he reasonably *suspects* is committing or is about to commit a felony or misdemeanor involving danger of forcible injury to persons (emphasis added). *See Johnson v. State*, 333 Ark. 673, 972 S.W.2d 935 (1998)(holding that, under the totality of the circumstances, the officer had sufficient evidence of reliability of a tip to justify an investigatory stop under Rule 3.1). The key word is *suspects*. The officer must first have a reasonable suspicion in order to stop and detain a person. At the time of the stop, it is not required that all elements of the criminal offense be established, nor is it required that the officer have probable cause to effectuate an arrest at that time.

At the suppression hearing, the following colloquy occurred:

> THE COURT: And after the initial confrontation with the Defendant who was in and out of his vehicle as you have testified, you came to the conclusion, one, that he may have harassed this woman; two, he may have been stalking this woman; and three,

that given his demeanor and dry mouth which you have described, he may well have been on drugs; is that correct?

OFFICER MOTSINGER: Yes, sir.

Under the totality of the circumstances, the trial court found that Officer Motsinger had a reasonable suspicion that Potter had committed or was about to commit the felony of stalking the woman or a misdemeanor of harrassment coupled with the potential of forcible injury or property damage. Specifically, the trial court found that

> [Officer Motsinger] saw the crime of harassment or arguably harassment being committed in his presence. . . . [I]n my judgment there was a reasonable suspicion at that point that the Defendant not only committed the crime of harassment but also the crime of stalking. He had under the Constitution of the United States and the State of Arkansas, he had a right to approach the Defendant, make inquiry.

The trial court noted that Officer Motsinger had the opportunity to evaluate Potter's demeanor and mannerisms. *See* Ark. Code Ann. § 16-81-203 (1), (2), (3), and (9).

■ We observe that the woman notified police that Potter had been following her for several weeks and that she felt that Potter was stalking her. Her descriptions of the location and type of vehicles were confirmed by Officer Motsinger. Based upon the totality of the circumstances and by reviewing the evidence in the light most favorable to the State, we cannot say that the trial court's ruling denying the motion to suppress was clearly against the preponderance of the evidence.

■ Having concluded that the investigatory stop was not in violation of our Rule 3.1 or the Fourth Amendment, we next address the issue whether the pat-down frisk was valid under Ark. R. Crim. P. 3.4, which provides in pertinent part:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no

event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others.

*Id.* Ark. R. Crim. P. 2.1 and Ark. Code Ann. § 16-81-203 also apply to reasonable suspicion.

We have stated that this rule is consistent with the holding in *Terry, supra,* which emphasizes that the purpose of the protective search is wholly for the safety of the police officer:

> We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.

*Hill, supra.* Police officers are not permitted to search for drugs under the guise of a search for weapons. *See Minnesota v. Dickerson,* 508 U.S. 366 (1993).

In the present case, the search was permissible under Rule 3.4, which requires that Officer Motsinger reasonably suspect that Potter was armed, and that he was "presently dangerous" to Motsinger or others. When Officer Motsinger arrived at the scene, he noticed that Potter repeatedly turned around and looked at him through the back window of his truck. When Potter returned to the vehicle at the officer's command, Potter began fumbling with something in the seat. Noticing appellant's furtive movement, Officer Motsinger drew his weapon when Potter reached behind the seat to get his wallet. He then instructed Potter to place his hands on the steering wheel, and he returned to his patrol car to call for backup. After the backup arrived, Officer Motsinger ordered Potter out of his truck and conducted a pat-down frisk for weapons. When his hand touched Potter's pocket, Potter said, "You might as well go ahead and take me to jail." Officer Motsinger felt something bulky in the pocket. When he pulled it out, he found a plastic baggie containing contraband that included marijuana, a smoking pipe, and a small amount of methamphetamine.

We conclude that the trial court did not commit error in finding that the officer's decision to conduct a pat-down search was appropriate to avoid a potentially dangerous situation. Given the

nature of the woman's call, Potter's persistent nervousness, his state-
ment to Officer Motsinger, and the bulge in his pocket, it was
reasonable to frisk Potter for safety reasons under Ark. R. Crim. P.
3.4. Having concluded that the trial court did not err in denying
Potter's motion to suppress evidence, his conviction and sentence
based upon his guilty plea is affirmed, and the ruling to the contrary
by the court of appeals is reversed.

Affirmed.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. I must dissent, and do so
for the reasons set out in the court of appeals' majority
decision rendered in this same case. *See Potter v. State*, 70 Ark. App.
495, 20 S.W.3d 454 (2000). Everyone agrees that Officer Mot-
singer's stop and detainment of Michael Potter must be based on
Arkansas Rule of Criminal Procedure 3.1, and on whether the
officer had reasonable suspicion that Potter had committed or was
about to commit (1) a felony or (2) a misdemeanor involving
danger of forcible injury to persons or of appropriation of or dam-
age to property. The State's evidence fell short of showing Officer
Motsinger suspected Potter as having committed (or being about to
commit) a crime that would fall within these two classifications.

Officer Motsinger testified that he thought the crime he was
investigating was stalking or harassment. However, the crime of
stalking is a felony, which requires "a terroristic threat with the
intent of placing [another] person in imminent fear of death or
serious bodily injury." *See* Ark. Code Ann. § 5-71-229(a)(1) and
(b)(1) (Repl. 1997). Here, the officer offered no testimony that
Potter was suspected of terroristic threatening, and, in fact, he
related that the woman who had called to complain about Potter
did not indicate she had been approached, contacted, or threatened
by Potter. To the contrary, Officer Motsinger averred that there was
no indication that the complainant was afraid of Potter; rather the
woman was only concerned that she was being followed.

The officer was correct that he could have suspected Potter of
committing the misdemeanor crime of harassment as set out in Ark.
Code Ann. § 5-71-208(a)(3) (Repl. 1997) (a person commits the
offense of harassment if, with the purpose to harass, annoy, or alarm
another person, without good cause, he follows a person in or

about a public place). However, as described above, Officer Motsinger had no reason to suspect Potter's actions involved the danger of forcible injury to the complainant or the appropriation of or damage to her property. Because Officer Motsinger's stop and detainment failed to comply with the dictates of Rule 3.1, I agree with the court of appeals that the officer's stop and detainment and subsequent search were unlawful.