Joe Lee PETTIGREW *v.* STATE of Arkansas

CA CR 98-695 984 S.W.2d 72

Court of Appeals of Arkansas
Division II
Opinion delivered December 23, 1998

*Bill Luppen,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Brad Newman,* Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Joe Lee Pettigrew appeals from his conviction in Pulaski County Circuit Court on August 28, 1997, on charges of possession of a controlled substance (crack cocaine) with intent to deliver and second-degree battery. Appellant argues on appeal: (1) that the trial court erred when it denied his motion to suppress seventy grams of crack cocaine seized from him following a pat-down search because the search violated his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and Rule 3.4 of the Arkansas Rules of Criminal Procedure; and (2) that the trial court erred when it denied his motion for directed verdict on the second-degree battery charge.

We hold that the pat-down search violated Pettigrew's constitutional right to be free from unreasonable search and seizure because the totality of the evidence does not establish that the police had objective, specific, and articulated facts that justified a reasonable suspicion that Pettigrew was armed and presently dangerous so as to present a threat as prescribed by Rule 3.4 of the Arkansas Rules of Criminal Procedure. Therefore, we reverse and remand the conviction for possession of a controlled substance with intent to deliver and the fifteen-year prison sentence imposed thereon. However, we affirm the second-degree battery conviction and sentence of three years' imprisonment and hold that the trial court did not err when it denied Pettigrew's motion for directed verdict.

On December 12, 1996, Detectives Greg Siegler and Barry Flannery of the Little Rock Police Department were on patrol when they observed a bronze-colored vehicle parked in a parking

lot near the intersection of 29th and Main Streets in Little Rock. The detectives testified that they observed a passenger in the vehicle who appeared to be drinking some type of alcoholic beverage, so they approached the vehicle to investigate. They found four men and a sixteen-year-old girl in the vehicle, and Siegler testified that he noticed open containers of beer and other alcoholic beverages in the vehicle. Siegler also testified (as quoted from the abstract):

> I had everybody get out of the car, and they were all standing around the vehicle. I then began a pat-down search of Mr. Pettigrew, at which time I felt an object in the front waistband of his pants. At that time I asked him what that was, and at that time, he pushed away from the vehicle and began to run. I grabbed him by the back of his shirt. He continued to run. Finally, he turned around and hit me with his elbow and then hit me with his fist. I then struck him with my flashlight. He hit me again with his fist. I grabbed him around the waist and he continued to carry me down to the parking lot. At that time other members of the Street Narcotics Detail arrived. They grabbed a-hold of him. He continued to run and struggle with us. We were finally able to get him to the ground. I believe Detective Green then sprayed him with a half-second burst of OC spray. It didn't seem to have any effect on him. We continued to struggle with him. We were finally able to get him handcuffed. Detective Gravett then removed that object that was in the front of his pants, which was approximately 70 grams of crack cocaine. . . .
>
> When I was conducting the pat-down search on the defendant is when I felt the object in his pants. I asked him what it was, and at that time he pushed off the car and began to run. . . When he ran I did not tell him to stop. I had a hold of his shirt and he was dragging me. . . I had hold of the back of his shirt, he was running and dragging me, and I was trying to pull back stopping him. After we struggled with him, were finally able to get him handcuffed, and Detective Gravett removed the plastic bag with all this.

Pettigrew filed a motion to suppress the evidence seized by the police, and the trial court considered that motion as part of the bench trial. Pettigrew argued that the police lacked a reasonable suspicion for conducting a pat-down search of his person arising merely from the fact that they had seen him in a vehicle with four

other persons where public drinking was taking place. The State argued that Detective Siegler conducted the pat-down search for his safety, and that the crack cocaine was initially felt in appellant's waistband during the pat-down search. The trial court denied appellant's motion to suppress. It later found appellant guilty of possession of a controlled substance with intent to deliver and sentenced him to fifteen years' imprisonment.

The Fourth Amendment to the Constitution of the United States protects the right of people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures. *Leopold v. State*, 15 Ark. App. 292, 692 S.W.2d 780 (1985). In reviewing the denial of a motion to suppress, we make an independent examination based on the totality of the circumstances, and will reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998); *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998). In *Frette*, the supreme court explained that there are three types of encounters between the police and private citizens. The first and least intrusive encounter is when an officer merely approaches an individual on a street and asks if he is willing to answer a question. *Id.* Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the Fourth Amendment. The second police encounter is when the officer may justifiably restrain an individual for a short period of time if they have an "articulable suspicion" that the person has committed or is about to commit a crime. *Id.* The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. The final category is the full-scale arrest, which must be based on probable cause. *Id.*

Rule 3.1 of the Arkansas Rules of Criminal Procedure provides that a law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine

the lawfulness of his conduct. In this context, a "reasonable suspicion" has been defined as a suspicion based upon facts or circumstances that give rise to more than a bare, imaginary, or purely conjectural suspicion. *Id.*

■ ■ Rule 3.4 of the Arkansas Rules of Criminal Procedure states:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer . . . may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others.

Rule 3.4 is the Arkansas standard for application of the holding announced in *Terry v. Ohio*, 392 U.S. 1 (1968), a case where an officer observed three men who appeared to be "casing" a store for a robbery. The officer then approached them for questioning and frisked them, finding weapons on two of them. The United States Supreme Court viewed that restraint on their liberty and the subsequent exploration of the outer surfaces of Terry's clothing as a "seizure" and "search," respectively, thus "reject[ing] the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a 'technical arrest' or a 'full-blown search.'" Then the Court considered what it termed "the central inquiry under the Fourth Amendment — the reasonableness in all the circumstances of *the particular governmental invasion* of a citizen's personal security." (Emphasis added.) In analyzing the reasonableness of the "frisk," the Court "balanced" the magnitude of the intrusion involved against "the governmental interest in investigating crime" and "*the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him.*" The Court concluded that "there must be *a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.*" *Id.* (Emphasis added.)

■ On the same day that the Supreme Court decided *Terry*, it also decided *Sibron v. New York*, 392 U. S. 41 (1968), a companion case. There, an officer had observed Sibron talking with several known narcotics addicts over an eight-hour period, but was completely ignorant about the content of the conversations and had seen nothing passed between Sibron and the addicts. Nevertheless, the officer ordered Sibron aside, telling him, "You know what I am after," and as Sibron reached into his pocket, the officer simultaneously thrust his hand into the same pocket and seized heroin. The Supreme Court reversed Sibron's conviction, holding that not only was "probable cause" lacking to arrest but also that the officer lacked adequate grounds to support a self-protective search for weapons. Writing for the Court, Chief Justice Warren stated:

> Before [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate reasonable grounds for doing so. *In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.*

*Id.* (Emphasis added.)

■ The Supreme Court has also stated that a frisk is only justified when the officer has a reasonable suspicion that the detainee is armed. *Ybarra v. Illinois*, 444 U.S. 85 (1979). The test in determining whether a frisk is reasonable is an objective one. While the officer need not be absolutely certain that the individual is armed, the basis for the frisk must lie in a reasonable belief that the officer's safety or that of others is at stake. *Terry, supra*, at 21. Essentially, the question is whether a reasonably prudent person in the officer's position would be warranted in the belief that the safety of the police or that of other persons was in danger. The officer's reasonable belief that the suspect is dangerous must be based on "specific and articulable facts." *Terry, supra*, at 21.

In the case now before us, there is no challenge to the validity of the initial police encounter between Detectives Flannery and Siegler and appellant and the other occupants of the vehicle that the detectives observed in the parking lot. The only issue is whether the pat-down frisk of appellant's person was a constitu-

tionally permissible intrusion into his personal security. This requires us to review the totality of the circumstances surrounding the pat-down frisk to determine whether the trial court's denial of appellant's motion to suppress was clearly against the preponderance of the evidence.

The totality of the circumstances in the record provides no "specific and articulable facts" upon which the inference could reasonably be warranted that Detective Siegler reasonably believed appellant to be "armed and presently dangerous" when he performed the pat-down search. Siegler and Detective Flannery, his partner on the encounter, testified that they were investigating what they suspected amounted to public drinking, a misdemeanor, when they encountered the vehicle in which appellant was sitting. There is no proof that appellant did anything that Siegler deemed threatening, or that Siegler had a reason to believe that appellant was armed and dangerous at the time of their encounter. Thus, Siegler had no reason to invade appellant's personal space in order to protect himself or anyone else.

The decisions of the United States Supreme Court, the Arkansas Supreme Court, and our court, as well as Rule 3.4, clearly show that before the police place a hand on someone to perform a pat-down or "frisk" search, the officer must be able to specify objective facts from which a reasonable person can infer that the person to be searched is presently armed and dangerous. The only constitutional justification for such intrusions into the personal space of persons detained by police is to provide protection against "any weapon or other dangerous thing which may be used against the officer or others." Ark. R. Crim. P. 3.4. Where the totality of the circumstances fails to show objective, specific, and articulable facts that someone detained by the police is armed and dangerous, the Fourth Amendment protects the detainee from the invasion of a weapons search because the police have no reasonable basis for placing hands on a detainee to search for weapons that no reasonable person would suspect to exist. This limitation on police conduct protects detained persons from unwarranted police intrusion into their personal liberty and security. It also protects the police from false or simply mistaken accusations by detainees of unjustified and offensive touching. Meanwhile, it ful-

fills the legitimate governmental interest in protecting the police and the public from the threat posed by armed and dangerous persons who, based on specific, objective, and articulable factors, pose a threat to the police or to other persons.

The State argues that we should reject appellant's challenge to the denial of the suppression motion because "nothing incriminating was found during the pat-down search for weapons." Rather, the State contends that Detective Siegler felt "an object in appellant's waistband, but before the object could be identified, appellant fled." By this argument, the State asserts that appellant nullified any claim that he might have otherwise asserted in challenging the propriety of the pat-down search when he attempted to flee and created "an entirely new situation for which the officers unquestionably had cause to pursue and search him." The decision by the United States Supreme Court in *California v. Hodari*, 499 U.S. 621 (1991), is cited in support of this argument. In that case, police officers in Oakland, California, observed several people surrounding a car. The car sped away and Hodari, one of the people standing around it, ran away as the patrolling officers approached. An officer pursued Hodari on foot and, during the pursuit, saw Hodari toss a rock-like substance that was later found and established to be cocaine. The Supreme Court upheld Hodari's adjudication as a juvenile against his motion to suppress the cocaine because it concluded that the cocaine was discovered following the chase of a person who had not been under police control. The State also contends that the officers had a legitimate basis for arresting appellant for fleeing and battery so that we should view the cocaine as having been discovered in the course of a valid search incident to arrest, citing *Hazelwood v. State*, 328 Ark. 602, 945 S.W.2d 365 (1997).

Neither argument is persuasive. Unlike the situation in *Hodari*, Detective Siegler actually detained appellant and was conducting a weapons search when he discovered the object that was ultimately seized and proved to be crack cocaine. A seizure under the Fourth Amendment had plainly occurred and a weapons search was underway when appellant struggled with Siegler and other officers in a vain attempt to escape. Siegler testified that he was grasping appellant's clothing during the attempted escape and

struggle. The search was initiated and resisted in this case, but it was never terminated. By contrast, in *Hodari* the police never initiated a weapons search; rather, the police saw the challenged evidence being thrown away during the pursuit of a person they had observed but never detained or searched.

Likewise, we find no merit in the State's argument that the seized cocaine in this case was discovered in a valid search incident to arrest. The totality of the circumstances shows that Detective Siegler discovered the "object" that was eventually found to be crack cocaine during the course of a pat-down weapons search, not an arrest for fleeing and battery. When the pat-down occurred, Siegler had no basis for arresting appellant, having merely observed him sitting in the driver's seat of a vehicle where the police thought that public drinking was occurring. Siegler had not seen appellant engage in any activity that constituted probable cause for an arrest. While we do not condone appellant's conduct in attempting to escape and in striking Siegler and other police officers who helped prevent the escape, we cannot pretend that appellant's conduct somehow "nullified" the plainly unconstitutional search.

 Based on our review of the totality of the circumstances, Detective Siegler lacked specific, objective, and articulable facts to support a reasonable suspicion that appellant was armed and presently dangerous when he conducted the pat-down search. Therefore, we hold that the trial court's denial of appellant's suppression motion was clearly against the preponderance of the evidence so that his conviction for possession of a controlled substance with intent to deliver must be reversed and remanded.

 Appellant's challenge to the trial court's denial of his motion for directed verdict on the second-degree battery charge does not, however, persuade us that the trial court's decision was wrong. Directed-verdict motions are treated as challenges to the sufficiency of the evidence. *Bennet v. State*, 308 Ark. 393, 825 S.W.2d 560 (1992). Where the sufficiency of the evidence is challenged, we consider only that evidence which supports the guilty verdict. *Stipes v. State*, 315 Ark. 719, 870 S.W.2d 388 (1994). The test is whether there is substantial evidence to sup-

port the verdict, and on appellate review, "it is only necessary for us to ascertain that evidence which is most favorable to the [State]." *Jameson v. State*, 333 Ark. 128, 130, 970 S.W.2d 705 (1998). Substantial evidence is evidence of such certainty and precision as to compel a conclusion one way or another. *Jenkins v. State*, 60 Ark. App. 122, 959 S.W.2d 427 (1998).

A person commits battery in the second degree if:

(1) With the purpose of causing physical injury to another person, he causes serious physical injury to any person;

(2) With the purpose of causing physical injury to another person, he causes physical injury to any person by means of a deadly weapon other than a firearm;

(3) He recklessly causes serious physical injury to another person by means of a deadly weapon;

(4) *He intentionally or knowingly without legal justification causes physical injury to one he knows to be:*

(A) *A law enforcement officer . . . while such officer . . . is acting in the line of duty[.]*

Ark. Code Ann. § 5-13-202(a) (Repl.1997) (emphasis added).

Appellant contends that there was insufficient proof that he caused a physical injury, which is defined by Arkansas Code Annotated § 5-1-102(14) (Repl. 1997) as the impairment of physical condition or the infliction of substantial pain.

█ There is no requirement that a victim of second-degree battery seek medical treatment in order to be deemed to have sustained a physical injury, for purposes of our statute that defines second-degree battery. *See Gilkey v. State*, 41 Ark. App. 100, 848 S.W.2d 439 (1993). Rather, in determining whether an injury inflicts substantial pain, the trier of fact must consider all of the testimony and may consider the severity of the attack and the sensitivity of the part of the body to which the injury is inflicted. The trier of fact is not required to set aside its common knowledge and may consider the evidence in the light of its observations and experiences in the affairs of life. *Holmes v. State*, 15 Ark. App. 163, 690 S.W.2d 738 (1985).

■ Here, the record shows that appellant struck Detective Siegler in the face. Siegler testified that he experienced pain from bruises and scrapes on his hands, face, elbows, and knees. Detective Chandler testified that he had a painful bruise on the side of his face from a blow received from appellant during the struggle to prevent his escape. Based on our standard of review, we find this evidence sufficient to compel the conclusion that the officers sustained physical injury while acting in the line of duty so that the trial court's denial of appellant's motion for directed verdict was proper. Therefore, we affirm that ruling and appellant's conviction for second-degree battery.

Reversed and remanded in part; affirmed in part.

AREY and MEADS, JJ., agree.