Douglas REEVES *v.* STATE of Arkansas

CA CR 02-122                                           91 S.W.3d 97

Court of Appeals of Arkansas
Division II
Opinion delivered December 4, 2002

*Bill Luppen,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Valerie L. Kelly,* Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. The appellant, Douglas Reeves, was found guilty in a bench trial of possession of methamphetamine and was sentenced to two years in prison. As his only issue on appeal, he contends that the trial court erred in denying his motion to suppress evidence found in a search of his person during a traffic stop. We find no error and affirm.

In reviewing a trial court's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances. *Lamb v. State,* 77 Ark. App. 54, 70 S.W.3d 397 (2002). We reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Stone v. State,* 348 Ark. 661, 74 S.W.3d 591 (2002). Because the determination of the preponderance of the evidence turns on questions of credibility and the weight to be given the testimony, we defer to the trial judge's superior position in this regard. *Crain v. State,* 78 Ark. App. 153, 79 S.W.3d 406 (2002).

Late in the evening of February 18, 2000, Patrolman David Bevis of the Russellville Police Department stopped the appellant because he did not observe a license plate on the vehicle appellant was driving. There was one other passenger in the vehicle. Officer Bevis testified that appellant was unusually nervous to have been stopped for such a minor offense. He said that appellant was stuttering, that his movements were "quick," and that appellant answered his questions before he completed asking them. Because of appellant's behavior, Bevis asked appellant to step out of the vehicle. Bevis then asked appellant if he had any weapons. Bevis

said that appellant reached into the right, front pocket of his pants and pulled out a knife. Bevis asked appellant if he had another weapon, and appellant began to reach into that same pocket. Bevis testified that he placed his hand over appellant's and told appellant not to pull anything out. Bevis then felt what he believed to be a pocket knife, and he retrieved it. Bevis stated that appellant began acting more nervous and fidgety when the second knife was removed and that the appellant had grabbed his hand as he was removing the knife.

Bevis further testified that appellant kept putting his hand over the same pocket. Bevis said that this disturbed him because of appellant's nervousness and the fact that he had retrieved.two knives. Bevis said that he decided to conduct a pat-down search for his own safety. He said that he tried to feel for a weapon in that same pocket but that appellant grabbed his hand and swatted it away when he "got high on the pocket where the watch pocket" was located. Bevis said that he kept trying to feel in that area and felt a lump. While appellant was trying to grab Bevis's hand, Bevis snatched "the lump" out of the watch pocket. Bevis testified that he had no idea what the lump was because appellant was swatting at his hands and he did not have a chance to manipulate it. He explained that "whatever it was, [appellant] didn't want me to get to it, and after pulling those two knives out of the same area, I wasn't going to take any chances." The "lump" was a baggie that contained what later proved to be methamphetamine.

Officer Bevis testified that he asked appellant to get out of the car within minutes of making the stop, when he had not yet checked appellant's license and papers. As best he could remember, he did not complete those tasks until after appellant had been arrested.

Appellant testified at the hearing that Bevis explained to him why he had been stopped and that Bevis asked for the vehicle's registration, proof of insurance, his driver's license, and the license of the passenger. Appellant said that he was going to get out of the vehicle but that Bevis directed him to stay inside while the licenses were being checked. Appellant said that Bevis came back

to the vehicle without a ticket book and returned the licenses and other papers. He said that the officer shined his flashlight inside the vehicle and asked about a radio that was in the front seat. Appellant testified that the officer then asked him to exit the vehicle and asked him if he had any weapons. Appellant said that Bevis had already secured a knife that had been sitting on the dash board and that he handed the officer a knife from his pocket. Appellant stated that Bevis took a package of cigarettes from his shirt pocket and looked inside. He said that Bevis had trouble returning the cigarettes to the pocket and that he took the cigarettes from Bevis and put them back in his pocket. He said that Bevis then reached into the watch pocket of his pants and pulled out the baggie. Appellant denied that he had slapped at the officer's hand.

■ Appellant does not contend that the stop was unauthorized. He first argues that, because he had provided the officer with his license and the other documentation, the officer should have issued him a citation for improperly displaying the license plate and should have let him go, instead of further detaining him by asking him to step out of the vehicle. This argument, however, is based entirely on appellant's version of the events surrounding the stop. On the other hand, it was the officer's testimony that he asked appellant to get out of the vehicle minutes after making the stop and before checking the licenses and other papers. Such conflicts in the testimony were for the trial judge to resolve, and the judge was not required to believe any witness's testimony, especially that of the accused, since he is the person most interested in the outcome of the proceedings. *Sanders v. State,* 76 Ark. App. 104, 61 S.W.3d 871 (2001).

■ ■ Otherwise, an officer making a valid traffic stop may, as a matter of course, order the driver to exit the vehicle. *Pennsylvania v. Mimms,* 434 U.S. 106 (1977). As has been observed by the supreme court:

> [H]aving made a valid traffic stop, the police officer may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic

violation, such as computerized checks of the vehicle's registra-
tion and the driver's license and criminal history, and the writing
up of the citation or warning. *See United States v. Carrazco,* 91
F.3d 65,66 (8th Cir. 1996). During this process, the officer may
ask the motorist routine questions such as his destination, the
purpose of the trip, or whether the officer may search the vehi-
cle, and he may act on whatever information is volunteered.

*Laime v. State,* 347 Ark. 142, 157-58, 60 S.W.3d 464, 474-75
(2001) (quoting *United States v. $404,905.00 in U.S. Currency,*
182 F.3d 643, 647 (8th Cir. 1999)). In this case, the trial court
could find that the officer had not yet completed the stop when
appellant was asked to get out of the vehicle. Therefore, we find
no merit in appellant's argument.

Next, appellant contends that he should have been issued a
citation and released after the knives were found because their pos-
session is not illegal. He argues that his continued detention was
not based on any reasonable suspicion that he was carrying any
type of weapon. We disagree.

■ ■ Once again, the trial court could find that the stop
was not yet completed when appellant was asked to get out of the
vehicle and at the time the officer conducted the protective frisk.
Rule 3.4 of the Arkansas Rules of Criminal Procedure provides:

> If a law enforcement officer who has detained a person under
> Rule 3.1 reasonably suspects that the person is armed and pres-
> ently dangerous to the officer or others, the officer or someone
> designated by him may search the outer clothing of such person
> and the immediate surroundings for, and seize, any weapon or
> other dangerous thing which may be used against the officer or
> others.

The test is whether a reasonably prudent man in the circumstances
would be warranted in the belief that his safety or that of others
was in danger. *Kearse v. State,* 65 Ark. App. 144, 986 S.W.2d 423
(1999). The officer's reasonable belief that the suspect is danger-
ous must be based on specific and articulable facts. *Pettigrew v.
State,* 64 Ark. App. 339, 984 S.W.2d 72 (1998). Here, the officer
testified that appellant was unusally nervous, that two knives had

been removed from appellant's pocket, that appellant had swatted his hand away from the pocket, and that appellant kept putting his hand near this pocket. Under these circumstances, we cannot say that the trial court's finding that a protective frisk was justified is clearly against the preponderance of the evidence.

■ Appellant's final argument is that the officer exceeded the scope of a permissible frisk when he removed the baggie from his pocket, citing *Bell v. State,* 68 Ark. App. 288, 7 S.W.3d 343 (1999). In *Bell,* the officer saw a bulge in the appellant's pocket. The officer testified that, when frisking the appellant, the bulge "felt like a plastic bag with what felt like a vegetable-like substance in the pocket." The officer removed the baggie and discovered that it contained marijuana. We reversed the denial of the motion to suppress based on the Supreme Court's decision in *Minnesota v. Dickerson,* 508 U.S. 366 (1993). There, the Court held that an officer may seize contraband that is detected during a pat-down search if the incriminating character of the object is immediately apparent. The Court reversed the conviction, however, because it was shown that the incriminating nature of the object was not immediately apparent because the officer had to manipulate the object before determining that it was contraband. In *Bell,* we reversed because the officer also manipulated the object to determine that it was contraband.

■ We find *Bell* to be distinguishable. Here, the officer testified that he did not have the opportunity to manipulate the object because appellant was grabbing at his hands. In this regard, this case more closely resembles the facts in *Shaver v. State,* 332 Ark. 13, 963 S.W.2d 598 (1998). In that case, Shaver was a passenger in his own truck. The driver, who was standing outside the truck, informed the officer that Shaver had two guns inside the vehicle, and the officer observed that Shaver was sitting with a shirt or towel over his lap with a leather holster beside him. Shaver was directed to exit the truck, and the officer proceeded to conduct a protective search. The officer detected a bulge in Shaver's pocket, at which time Shaver "bowed up," causing the officer to press Shaver against the truck. The officer then decided

to remove the object that caused the bulge, which turned out to be a bag containing a white powdery substance. The officer testified that he did not know what was in Shaver's pocket and that the bulge did not feel like a weapon. He said that it was his intent to pull everything out of Shaver's pockets, "regardless." In upholding the search of Shaver, the supreme court held that the ruling in *Minnesota v. Dickerson, supra,* was not controlling. The court reasoned:

> In his argument, Shaver places emphasis on [the officer's] testimony that, when he searched Shaver's pocket, the bulge "did not feel like a weapon" and this his "intent was to pull everything out of Mr. Shaver's pockets, regardless." In doing so, however, he ignores the circumstances leading to the patdown of Shaver - that guns were present, Shaver was seen next to a leather holster with a tee shirt or towel in his lap, and Shaver appeared "a bit agitated" and was ordered to "calm down." To insure the officers' safety, [the officer] felt compelled to check the "big bulge" in Shaver's pocket, and while, in doing so, he found a bag of white powdery substance, [the officer] remained uncertain regarding what else was in Shaver's pockets. Under these described circumstances, we cannot say the trial court was clearly wrong in finding that [the officer] was justified in conducting a limited search to determine that Shaver had no weapon on his person.

*Shaver,* at 17, 963 S.W.2d at 600. In this case, two knives had already been removed from appellant's pocket, and the appellant was swatting at the officer's hand as the officer was trying to conduct the protective search. It is our conclusion that, based on these circumstances, combined with appellant's nervous behavior, the trial court's decision is not clearly against the preponderance of the evidence.

Affirmed.

JENNINGS and CRABTREE, JJ., agree.