2010 Ark. App. 857

**Talvis Martel GILBERT, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–674.**

Court of Appeals of Arkansas.

Dec. 15, 2010.

William Plunkett Luppen, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Kathryn Henry, Asst. Dist. Atty., Little Rock, for appellee.

RAYMOND R. ABRAMSON, Judge.

Talvis Gilbert was the back-seat passenger of a vehicle that officers from the Alexander Police Department stopped as part of a roadblock around 10 p.m. one evening. The driver of the vehicle could not provide a valid driver's license, so officers directed him to a nearby parking lot so that they could determine whether the driver did indeed have this necessity. The front-seat passenger said he did not have any identification either. Upon pulling into the parking lot, officers asked the driver and the front-seat passenger to exit the vehicle so that the officers could speak with them. None of the men could give a clear answer regarding the group's starting point of travel or final destination.

At some point, officer Jeremy Brown noticed Gilbert still sitting in the back seat of the vehicle. The vehicle's windows were dark, so officer Brown opened the door and asked Gilbert for identification, which Gilbert did not have. Officer Brown then asked Gilbert to step out of the vehicle. Officer Brown did not immediately notice any weapons, see any suspicious bulges, or have any indication that Gilbert had committed a crime. But when officer Brown inquired whether Gilbert had anything illegal or a weapon on him, Gilbert did not give a direct answer and "fumbled around for 30 seconds or so" before responding that he did not. Officer Brown thought that Gilbert's body language indicated he was lying—Gilbert had shrugged shoulders, would not look officer Brown in the

eyes, and seemed to "tighten up" in denial. Wanting to protect his and the other officers' safety, officer Brown asked Gilbert if he could frisk him, and Gilbert complied. During the frisk, officer Brown felt a gun in Gilbert's waistband. Another officer came to assist officer Brown and recovered a loaded gun from Gilbert's waistband.

The police arrested Gilbert for possession of a weapon. After running Gilbert's information through the system, the officers discovered that Gilbert was a parolee. Gilbert was searched, and officers discovered a large sum of money in Gilbert's pocket. An officer eventually took Gilbert to the Saline County Jail, where another search of Gilbert's person revealed two plastic baggies of cocaine. Gilbert was charged with possession of cocaine, simultaneous possession of drugs and firearms, and possession of firearms by a certain person.

Pretrial, Gilbert moved to suppress the gun and the cocaine. After a hearing, the court denied Gilbert's motion to suppress. Gilbert then entered a conditional guilty plea to the charges of possession of cocaine and possession of a firearm by a certain person (the charge for simultaneous possession of drugs and firearms was *nolle prossed*). The court sentenced him to fifteen years' imprisonment. On appeal, Gilbert challenges the circuit court's denial of his motion to suppress. We affirm.

In reviewing the circuit court's denial of a motion to suppress, we make an independent determination based on the totality of the circumstances. *Reeves v. State*, 80 Ark.App. 61, 63, 91 S.W.3d 97, 99 (2002). In doing so, we defer to the circuit court's credibility and weight-of-the-evidence determinations. *Id.* We reverse only if the circuit court's decision is clearly against the preponderance of the evidence. *Shaver v. State*, 332 Ark. 13, 16, 963 S.W.2d 598, 600 (1998).

■ Gilbert first argues that he was illegally seized when officer Brown ordered him to exit the vehicle. But in *Maryland v. Wilson*, the United States Supreme Court held that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); *see also Wimbley v. State*, 68 Ark.App. 56, 59–60, 3 S.W.3d 709, 711 (1999). Gilbert does not challenge the legality of the roadblock or the initial stop. And officer Brown testified that when he asked Gilbert to exit the vehicle, other officers were still speaking with the driver and the front-seat passenger. Thus, ordering Gilbert out of the vehicle during the pendency of the valid traffic stop was not an illegal seizure.

■ Gilbert next challenges whether officer Brown, as a predicate to frisking Gilbert, had reasonable suspicion that he was carrying a weapon. Arkansas Rule of Criminal Procedure 3.4 provides,

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others.

Reasonable suspicion is "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Ark. R.Crim. P. 2.1. "The test is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Reeves*, 80 Ark.App. at 66, 91 S.W.3d at 101. "The officer's reasonable belief that the suspect is dangerous must be based on specific and articulable facts." *Id.*

Our legislature has laid out certain factors for the circuit court to consider in determining whether an officer had reasonable suspicion to perform a search of this kind. *See* Ark.Code Ann. § 16–81–203 (Repl.2005). The factors include: (1) the demeanor of the suspect; (2) the gait and manner of the suspect; (3) any knowledge the officer may have of the suspect's background or character; (4) whether the suspect is carrying anything, and what he or she is carrying; (5) the manner in which the suspect is dressed, including bulges in clothing, when considered in light of all of the other factors; (6) the time of the day or night the suspect is observed; (7) any overheard conversation of the suspect; (8) the particular streets and areas involved; (9) any information received from third persons, whether they are known or unknown; (10) whether the suspect is consorting with others whose conduct is reasonably suspect; (11) the suspect's proximity to known criminal conduct; (12) the incidence of crime in the immediate neighborhood; (13) the suspect's apparent effort to conceal an article; and (14) the apparent effort of the suspect to avoid identification or confrontation by a law enforcement officer. Ark.Code Ann. § 16–81–203.

Again, Gilbert does not challenge the legality of the roadblock or the initial stop. And, as we just concluded, no illegal seizure occurred when officer Brown ordered Gilbert to exit the vehicle. Further, the initial stop was ongoing during officer Brown's encounter with Gilbert—officers

were still talking to the driver and the front-seat passenger. Thus, the only question for us to answer on appeal is whether Brown had reasonable suspicion that Gilbert was armed and presently dangerous when he decided to frisk him.

To reiterate the pertinent facts, the traffic stop occurred around 10 p.m. And when officer Brown asked Gilbert whether he had any weapons or anything illegal on him, Gilbert did not answer directly and fumbled around for about thirty seconds before responding that he did not. Officer Brown testified that Gilbert's body language—shrugged shoulders, no eye contact, tightening up—indicated to him that Gilbert was lying. Further, no one traveling in the vehicle could provide identification or say with certainty where the group was coming from or where they were going.

Looking at the totality of the circumstances and giving due deference to the circuit court's credibility and weight-of-the-evidence determinations, we agree with the circuit court. Officer Brown had reasonable suspicion that Gilbert was carrying a weapon and, therefore, his frisk of Gilbert was not an illegal search. *See, e.g., Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003); *Muhammad v. State,* 337 Ark. 291, 988 S.W.2d 17 (1999); *State v. Barter,* 310 Ark. 94, 833 S.W.2d 372 (1992).

Gilbert points strongly to the somewhat conflicting testimony and reports of assistant police chief Thomas Leath and part-time patrolman Jerry Rapier. Assistant police chief Leath testified that it was standard operating procedure at the road-block to frisk anyone asked to step out of a vehicle for weapons. But officer Brown testified that he asked Gilbert if he could search him after Gilbert's delayed, fumbling response to Brown's question about whether Gilbert had anything illegal or any weapons on him. Officer Brown said that the purpose of his search was to protect his and the other officers' safety. Again, it was up to the circuit court to resolve any credibility and weight-of-the-evidence questions. *Reeves,* 80 Ark.App. at 63, 91 S.W.3d at 99. In sum, the circuit court's denial of Gilbert's motion to suppress is not clearly against the preponderance of the evidence.

Affirmed.

PITTMAN, KINARD, and GRUBER, JJ., agree.

GLADWIN and ROBBINS, JJ., dissent.

JOHN B. ROBBINS, Judge, dissenting.

I believe that Gilbert has demonstrated clear error in the denial of his motion to suppress. I do not take issue with the initial removal of Gilbert from the vehicle. But, as a preliminary matter, I seriously question whether detention of Gilbert was appropriate under Ark. R.Crim. P. 3.1. The officer frankly stated that he had no basis to suspect Gilbert of a crime. Even so, the more fundamental problem I have with this appeal is my disagreement with the majority opinion that there were objective, articulable facts to support the officer *Terry*-frisking Gilbert.

Our court is to conduct an independent determination based upon the totality of circumstances, reviewing findings of historical fact for clear error, giving due weight to inferences of the trial court. *Blount v. State,* 2010 Ark. App. 219, at 3–4, 2010 WL 724317. We begin with the presumption that searches conducted without the benefit of a warrant are per se unreasonable. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Pursuant to Arkansas Rule of Criminal Procedure 3.4, a weapons-search, if warranted, must follow a proper Rule 3.1 encounter. Assuming for the moment that the continued detention was proper, the State failed to present specific, articulable

facts that would support a reasonable officer's belief that Gilbert was presently armed and dangerous when the frisk took place. The test is an objective one. *Pettigrew v. State*, 64 Ark.App. 339, 984 S.W.2d 72 (1998).

The police set up this roadblock at night, circumstances under the government's control. The objective, articulable facts that are satisfactory to the judges of the majority opinion are: (1) the lack of a cohesive story of where the men were coming from or going, and (2) the nervous, slow negative response to the question of whether he had "anything illegal or weapons." The officer did not observe any suspicious bulges in Gilbert's clothing, and his personal belief that Gilbert was lying was not an objective fact. Nervousness is commonplace when confronted by law enforcement. *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004). There was no dispute that it was part of the police department's routine to pat down people encountered as a result of these roadblocks.

Arkansas Code Annotated section 16–81–203 gives a laundry list of reasons why an officer might "reasonably suspect." They include the time of day, area of town, efforts to conceal identity, suspicious cohorts, etcetera. While these factors might lend themselves to continued detention in this case, the objective, articulable facts do not support a reasonable suspicion that Gilbert was presently armed and dangerous.

I disagree with the majority opinion that *Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999), supports denial of the motion to suppress. There, the officer became increasingly concerned for his own safety after learning that Muhammad had a criminal record including aggravated robbery. Likewise, in *State v. Barter*, 310 Ark. 94, 833 S.W.2d 372 (1992), the officer had noticed a bulge in Barter's clothing and reasonably suspected him of being involved in drug dealing.

In *Pettigrew v. State, supra,* the appellant was taken out of a vehicle he was not driving, and officers searched his person. In reversing the denial of suppression we held there to be no reasonable basis for a pat-down search of Mr. Pettigrew. Our court quoted from *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968):

> Before [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.

Because there lacked such objective, particular facts, I dissent.

GLADWIN, J., joins.