

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–14–163

| | |
|---|---|
| ROBERT KENNETH BARBER<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** February 25, 2015<br><br>APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. CR-2012-1815-1]<br><br>HONORABLE WILLIAM A. STOREY,<br>JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Robert Barber appeals his conviction for being an accomplice to possession of a controlled substance. He argues that the circuit court erred in denying his motion to suppress his statements to the police. We affirm.

Barber was charged as an accomplice to possession of a firearm by certain persons, simultaneous possession of drugs and firearms, possession of drug paraphernalia, and possession of a controlled substance. He filed a motion to suppress statements that he made to the police, arguing that the statements were obtained as a result of a custodial interrogation and that he had not been advised of his *Miranda* rights.

At a hearing on the motion to suppress, Officer Richard Logue explained that on September 30, 2012, he was dispatched to the scene of a traffic accident. The caller who reported the accident also reported two black males walking northbound away from the vehicle. Logue did not find anyone at the vehicle but observed two black males (later

identified as Keith Matthews and Barber) walking northbound. Suspecting that the two males had left the scene of a property-damage accident, Logue approached them. As he approached, he noticed Matthews dart between two vehicles and appear to toss something onto the ground. Logue made contact with the men, and both men denied being in the car or driving the car. Logue noticed Matthews chewing something, and Matthews told him it was candy. Matthews's mother then arrived on the scene and stated that it was her car. Logue told the men that they were free to leave, and they began walking away.

Logue then inspected the area where he thought Matthews had tossed something and found a baggie of pills, which were the same color as the "candy" that had been in Matthews's mouth. Logue testified that he yelled at Matthews to stop, walked over to him, and placed him under arrest. Logue stated that Barber had also returned to the scene but that he (Logue) had no further business with Barber and that his focus was on Matthews. After Matthews was placed in handcuffs, Barber stated that the pills belonged to him. Logue testified that he was not questioning Barber when he said the pills were his and that Barber had been free to leave up to that point. After Barber made that statement, however, Logue arrested him.

On cross-examination, Logue admitted that in his written report, it stated that he "yelled at both subjects to stop" after they started walking away, but he insisted that he was only yelling at Matthews and that Barber walked over of his own volition. Logue agreed that the report was inaccurate. He also stated that he was "not sure" if he had asked Barber about the pills, but in the video of the incident that was played, Logue appears to direct the question "You saying you threw it on the ground?" at Barber.

Logue later acknowledged that the question was directed at Barber. Logue testified, however, that Barber was not detained at that time and was free to leave.

Barber testified that he and Matthews were called back by Logue and that he did not feel free to continue walking down the street. He explained that he was questioned by Logue about the contraband located at the scene and felt compelled to answer, but he was not advised of his right to not answer questions or to have an attorney present before being questioned. On cross-examination, Barber admitted that he had claimed ownership of the pills. Barber also stated that Logue had placed Matthews in handcuffs and was asking him questions, but Logue was "not yet" talking to him (Barber).

After the testimony concluded, the State argued that this was a Rule 3.1 stop and that Barber was not detained. Defense counsel argued that when Logue called the two men back, it became an illegal detention under Rule 3.1 because Logue admittedly had no reasonable suspicion to detain Barber. Counsel argued that a reasonable person under Barber's circumstances would not have felt free to leave. The court found that

> the stop effected by the police officer was a valid 3.1 stop. I don't think or I don't believe that these were custodial statements. The Defendant testifies that he didn't feel free to leave. The police officer testifies that he was free to leave. And in my judgment he was free to leave. I don't consider this that [sic] he was in custody so I'm denying the Defendant's Motion to Suppress.

Barber filed a motion to reconsider, arguing that Barber was not lawfully detained pursuant to Rule 3.1 or, alternatively, that even if he was lawfully detained, the questioning was the functional equivalent of a custodial interrogation that required *Miranda* warnings. The motion was denied. A jury found Barber guilty of accomplice to

possession of a controlled substance, and he received a sentence of twelve years' imprisonment.

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *King v. State*, 2014 Ark. App. 81, 432 S.W.3d 127. We defer to the circuit court's credibility and weight-of-the-evidence determinations, and we reverse only if the court's decision is clearly against the preponderance of the evidence. *Gilbert v. State*, 2010 Ark. App. 857, 379 S.W.3d 774.

Barber argues that in reviewing the totality of the circumstances in this case, it is clear that both he and Matthews were called back to the scene by Logue and that a reasonable person under those circumstances would not feel free to leave. Barber asserts that "[b]y returning, [he] submitted to Officer Logue's show of authority, and he was seized within the meaning of the Fourth Amendment," thus invoking *Miranda* protections. While he was seized, Logue specifically asked him whether the pills were his, which was the equivalent of a custodial interrogation without the benefit of *Miranda* warnings. Thus, he argues, his statement (and the plastic baggies found on his person upon his arrest) should have been suppressed. In response, the State generally argues that this was a valid *Terry* stop, was not the equivalent of a formal arrest, and was not subject to the *Miranda* requirements.

We hold that we must affirm the circuit court because Barber has failed to challenge the court's ruling that this was a "valid 3.1 stop." Barber challenged this ruling below, arguing that the detention was illegal under Rule 3.1 because Logue had no reasonable suspicion to detain Barber. But he did not challenge the circuit court's Rule 3.1 ruling on appeal and, in fact, makes no mention of Rule 3.1 in his argument. The appellate argument concentrates on whether the Fourth and Fifth Amendments to the United States Constitution were violated; this argument is separate from the court's Rule 3.1 ruling, which also needed to be argued on appeal. Issues raised below but not argued on appeal are considered abandoned. *Stewart v. State*, 2014 Ark. 419, 443 S.W.3d 538. And when an appellant fails to attack a circuit court's independent, alternative basis for its ruling, we will not reverse. *See Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002). Thus, we affirm the circuit court.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*The Lane Firm*, by: *Jonathan T. Lane*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.