Cite as 2015 Ark. App. 304

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR–14–326

|  |  |  |
|---|---|---|
| | | Opinion Delivered   MAY 6, 2015 |
| BRUCE ALLEN ECHOLS | | APPEAL FROM THE SALINE |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. CR-12-513A-3] |
| V. | | |
| | | HONORABLE GRISHAM PHILLIPS, |
| | | JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Bruce Allen Echols was convicted of four counts of aggravated robbery, each of which occurred during a bank robbery at First Security Bank in Benton on September 6, 2012. Mr. Echols was sentenced to four concurrent thirty-year prison terms, and he now appeals.[1]

On appeal, Mr. Echols argues that his arrest was pretextual, not supported by probable cause, and therefore illegal. Mr. Echols contends that, because he was illegally arrested, the trial court erred in denying his motion to suppress his custodial statements to the police, as well as physical evidence obtained pursuant to a subsequent search warrant that was in part

---

[1]This appeal was previously before this court, and we remanded to settle and supplement the record with a transcript of appellant's custodial statement to the police. *See Echols v. State*, 2014 Ark. App. 688. We also ordered rebriefing to cure additional deficiencies in appellant's addendum. *Id*. Pursuant to our directives, the record has now been supplemented and a conforming abstract, brief, and addendum has been filed.

based on those custodial statements. Mr. Echols asserts that all of this incriminating evidence was derived from his illegal detention, and that it should have been excluded as fruit of the poisonous tree.[2] We affirm.

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *King v. State*, 2014 Ark. App. 81, 432 S.W.3d 127. We defer to the trial court's credibility and weight-of-the-evidence determinations, and we reverse only if the court's decision is clearly against the preponderance of the evidence. *Gilbert v. State*, 2010 Ark. App. 857, 379 S.W.3d 774.

On September 6, 2012, First Security Bank was robbed by a man wearing a camouflage t-shirt, blue jeans with a white object hanging out of the right rear pocket, and a black mask over his face. The robber wielded what appeared to be a black handgun, and he was seen leaving in a white Hyundai Sonata.

On September 8, 2012, the Benton Police Department received a report from an AT&T phone store in Bryant of suspicious behavior involving a man making unusually large purchases with cash. The police spotted a white Hyundai Sonata leaving the AT&T parking lot that day and stopped the car for an illegal lane change and failure to wear a seat belt.

---

[2]Mr. Echols, who is represented by counsel, filed a pro se motion to supplement the brief after his counsel's brief was filed, attempting to make additional arguments on appeal. We deny the motion. *See Winston v. State*, 2009 Ark. 439.

The driver of the Hyundai was appellant's brother, Terry Echols, and he consented to a search of the vehicle. During the search, the police discovered certain items of clothing matching that worn by the robber at First Security Bank in the trunk of the car, including jeans, the shoes worn in the robbery, and a black mask. A twenty-dollar bill was found in Terry Echols's wallet that was confirmed to have been stolen from the bank, and money recovered from the AT&T store was also found to have been stolen from the bank.

Upon questioning, Terry Echols told the police that the car belonged to his mother but that his brother, Bruce Echols, drove it all the time. Terry advised that he was borrowing the vehicle from Bruce that day, that he was aware of the robbery but was not involved, and that he had received money from Bruce and used it to buy items from the AT&T store.

Based on Terry's statements, the police developed Bruce Echols as a suspect in the robbery. The police arrested Bruce on September 8, 2012, on a pre-existing arrest warrant dated August 20, 2012, for failure to appear in district court on the misdemeanor charge of second-degree terroristic threatening. Bruce was arrested at his mobile home in Benton, where he and Terry lived together.

After being arrested Bruce was transported to the police station, where he waived his *Miranda* rights and was interrogated by officers about the robbery. During the first couple of hours of the investigation, Bruce denied any involvement in the robbery. However, he subsequently confessed, in some detail, to committing the robbery. Bruce told the officers about a black, hand-made object that was made to look like a gun, and he indicated that he

had used the object in committing the robbery. Bruce led the police to a cemetery where he had ditched the black object, and the police recovered it as evidence.

During the early stages of the interrogation of Bruce Echols, before Bruce had admitted to the robbery, the police obtained a warrant to search his home. The affidavit in support of the search warrant was sworn out by Officer Patrick Baker, and it stated in relevant part:

> 1. Affiant states that on September 6, 2012 at approximately 12:20 PM, the First Security Bank located at 1401 Military Road in the City of Benton was robbed at gunpoint by a white male subject wearing a camouflage t-shirt, blue jeans with a white object hanging from the right rear pocket, brown shoes, a camouflage cap, and a black mask, and carrying a tan satchel over his left arm. The subject brandished a handgun and demanded money from the employees. Witnesses stated the subject fled into the Hastings parking lot and drove away in a white or tan Hyundai Sonata.
>
> 2. Affiant states that on September 8, 2012 at approximately 1:30 PM, Bryant Police Sgt. Nick Ramsey conducted a traffic stop on a white Hyundai Sonata after responding to a suspicious person call at the AT&T store in Bryant at the Alcoa Exchange shopping center. The employee informed officers that a person had been in the store making large-cash purchases for two days in a row. The employee saw the subject in a white Hyundai passenger car and thought it and the subject fit the description of the person who robbed the First Security Bank in Benton.
>
> 3. Affiant states Sgt. Ramsey made contact with the driver of the car, Terry Echols. Sgt. Ramsey stated [Terry] Echols was nervous and looked like the suspect seen on the bank's security footage. Sgt. Brian Bigelow of the Benton Police Department responded and contacted Det. Brett Carpenter who was already in the area in an off-duty capacity. Ramsey obtained consent to search the vehicle from [Terry] Echols and in the trunk was located a pair of blue jeans with a white bag hanging out of the right pocket, brown shoes similar to those seen on the video, and a dark colored mask.
>
> 4. Affiant states that [Terry] Echols was brought to the Benton Police Department for questioning and the vehicle impounded. Sgt. Bigelow obtained a list of serial numbers for the bait money taken during the robbery. One twenty dollar bill in [Terry] Echols wallet was confirmed to be on the list.

5.   Affiant states Sgt. Bigelow returned to the AT&T store where they located the deposit for September 7, 2012 and inside the deposit were four more twenty dollar bills that match the serial numbers of the bait money taken during the robbery.

6.   Affiant states that Det. Don Robertson of the Benton Police Department interviewed Bruce Echols at the Benton Police Department on September 8, 2012. Bruce Echols told Det. Robertson that his brother, Terry Echols, has been using his car during the day recently and was using it on the day of the robbery.  Bruce Echols also indicated that he has no personal clothing in the vehicle.  Bruce Echols stated he took approximately $100 from Terry Echols' wallet on Thursday night, September 6th, at approximately 8:30 PM.

7.   Affiant states that he believes other moneys and other evidence associated with the robbery are currently located inside the mobile home located at 3025 Highway 5 North, Lot #48, in the City of Benton, Saline County, Arkansas.

Pursuant to the warrant, Bruce's mobile home was searched at 6:45 p.m. on September 8, 2012.  During the search the police seized several items of contraband from Bruce's bedroom, including a First Security Bank bag and $8114 in cash, some of which was still in bands.

Bruce Echols was subsequently arrested and charged with four counts of aggravated robbery.  Prior to trial Bruce Echols filed a motion to suppress evidence, wherein he alleged that his arrest was illegal, pretextual, and unsupported by probable cause.[3]  Bruce moved to suppress all of the evidence obtained as a result of his allegedly unlawful arrest, including his custodial statements, the fake gun, and the items seized from his residence pursuant to the search warrant.

At the suppression hearing, Officer Brian Bigelow gave testimony about the traffic stop of Terry Echols, which led the police to develop Bruce Echols as a suspect.  Officer Bigelow

---

[3]Bruce also raised various other arguments in his motion to suppress, all of which were rejected by the trial court, but none of those arguments are at issue in this appeal.

testified that he was familiar with Bruce Echols from past dealings, and that he knew there was an active warrant out for him. According to Officer Bigelow, he had seen the arrest warrant in the warrant cabinet on the day before Terry was stopped and Bruce was arrested. Officer Bigelow went to Bruce's home on September 8, 2012, informed Bruce that he had an arrest warrant, and arrested him.[4]

On cross-examination, Officer Bigelow stated that he did not attempt to serve the arrest warrant on the previous day because he was busy with another warrant. Officer Bigelow further testified that he went to Bruce's house to pick him up on the misdemeanor warrant, but that he also knew Bruce was a robbery suspect at that point.

At the conclusion of the suppression hearing the trial court denied Bruce's motion to suppress. Bruce's custodial confession and the physical evidence linking him to the crime were introduced at the subsequent jury trial, and the jury found Bruce guilty of committing the bank robbery.

The threshold issue in this case is whether the arrest of Bruce Echols was pretextual. Bruce argues that it was and, that as a result of his pretextual arrest, the fruits of his arrest should have been suppressed.

The seminal case on this issue is *State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215 (2002), which is cited in the appellant's brief. In *Sullivan*, the supreme court held that under the protections afforded by Article 2, section 15, of the Arkansas Constitution, pretextual

---

[4]The arrest warrant was actually signed by another arresting officer that day, but this fact is not material to our analysis.

arrests—arrests that would not have occurred *but for* an ulterior investigative motive—are unreasonable police conduct warranting application of the exclusionary rule. The police officer in *Sullivan* suspected that the appellant was involved in narcotics, but had no probable cause to arrest for any drug violation, and after conducting a traffic stop the officer arrested the appellant for multiple minor offenses including speeding, failure to produce registration and insurance, and possessing a weapon (a roofing hatchet). A subsequent inventory search of the vehicle uncovered narcotics. The crucial question as announced by our supreme court was whether the arresting officer would have effected the arrest but for his suspicion that Sullivan was involved in narcotics. The trial court answered this question in the negative, finding the arrest to be pretextual and suppressing the fruits of the arrest on that basis, and the supreme court affirmed.

In the present case, Bruce Echols argues that he was arrested on the unrelated misdemeanor warrant for the sole purpose of questioning him about the robbery. As such, he contends that the police conduct was unreasonable and that the exclusionary rule applies.

Under the facts of this case the trial court found that Bruce's arrest was not pretextual, and on review we cannot say that this was error. In *State v. Sullivan*, 348 Ark. 647, 654, 74 S.W.3d 215, 220 (2002), the supreme court wrote:

> Claims of pretextual arrest raise a unique problem in the law—deciding whether an ulterior motive prompted an arrest which otherwise would not have occurred. Confusion can be avoided by applying a "but for" approach, that is, would the arrest not have occurred but for the other, typically the more serious, crime. Where the police have a dual motive in making an arrest, what might be termed the covert motive is not tainted by the overt motive, even though the covert motive may be dominant, so long as the arrest would have been carried out had the covert motive been absent.

(quoting *Hines v. State*, 289 Ark. 50, 55, 709 S.W.2d 65, 68 (1986)). When testimony is presented that an arrest on an unrelated warrant would have occurred in any event, no pretext can be found. *See Hines*, *supra*; *see also Stephens v. State*, 342 Ark. 151, 28 S.W.3d 260 (2000) (holding that there was no pretextual arrest when officers approached Stephens with an outstanding arrest warrant).

In the case at bar, it is undisputed that Bruce Echols had an outstanding arrest warrant for failure to appear on a second-degree terroristic threatening charge prior to the commission of the bank robbery. Officer Bigelow observed this arrest warrant in the warrant cabinet on the day before Bruce Echols was arrested. When questioned about why he did not serve the warrant on the day he saw it in the cabinet, Officer Bigelow stated, "I did not have the ability at that time" because he was busy getting another warrant for another officer to serve. When asked whether he would have served the arrest warrant on Bruce Echols but for the fact that he knew about the robbery, Officer Bigelow replied, "If I knew where he was, sure." When questioned further about what prompted him to arrest Bruce, Officer Bigelow testified, "When I knew he was a person of interest, that's one of the reasons I went to the house, yes, and I knew we had a reason to pick him up anyway." Officer Bigelow also stated, "I went out there to pick him up on a warrant if we can make contact with him . . . [and] take him down to detectives and allow them to speak with him about the robbery."

Based on the totality of these circumstances, leaving credibility determinations to the trial court and according due weight to inferences drawn by the trial court, we hold that the trial court's decision that the arrest was not pretextual was not clearly against the

preponderance of the evidence. Based on the testimony of Officer Bigelow, the trial court could reasonably conclude that, even had Bruce Echols not been suspected of the robbery, he nonetheless would have been arrested on the outstanding misdemeanor warrant. Because there was testimony from which the trial court could find that there was a dual motive in making the arrest, we uphold its determination that the arrest did not amount to unreasonable police conduct.

Bruce also argues that his arrest was illegal because the police lacked probable cause to arrest him for the robbery. However, this argument presumes that his arrest was pretextual, requiring the necessity for probable cause to arrest for the greater offense. *See Romes v. State*, 356 Ark. 26, 144 S.W.3d 750 (2004). Because we have held that Bruce's arrest was not pretextual and was premised on a valid misdemeanor arrest warrant, his arrest was lawful.

Bruce next argues that, as a result of him being illegally arrested, his ensuing custodial confession should have been suppressed, as well as evidence of the fake gun that he showed the police at the cemetery. This argument fails, however, because we have upheld the legality of Bruce's arrest. Where the tree is not poisonous, neither is the fruit. *Criddle v. State*, 338 Ark. 744, 1 S.W.3d 436 (1999).

Finally, Bruce argues that the affidavit that provided probable cause to search his home was based in critical part on illegally obtained statements derived from his illegal detention, and therefore that the evidence discovered under the search warrant falls under the exclusionary rule. Bruce concedes in his argument that "probable cause no doubt existed for a warrant to search the common areas of the house and Terry's private room." However,

9

SLIP OPINION

Bruce takes exception to the search warrant authorizing a search of the entire home, to include his private room. Bruce asserts that the authority to search his room was based in critical part on the statements he made to the police, contained in paragraph six of the affidavit, that he had taken approximately $100 from Terry Echols's wallet on September 6, 2012, at approximately 8:30 p.m. He argues that because this statement was elicited during his illegal detention, there was no probable cause to search his room and the items found there should have been suppressed.

In order for a search warrant to issue, evidence must be provided to show that the contraband or evidence of a crime sought is likely to be in the place to be searched. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). In addition, the affidavit for search warrant must set forth facts and circumstances establishing probable cause to believe that things subject to seizure will be found in the place to be searched. *Id.*

In this case Bruce shared a house with his brother, Terry, who had been stopped by the police in a car matching the description of the car used in the robbery. The police found clothing used in the robbery, including a mask, in the trunk, and also recovered money stolen from the bank on Terry's person and at the store where he had recently made purchases. As we have discussed previously, Bruce's arrest was lawful and therefore, contrary to his argument, any custodial statements he made to the police could lawfully be contained in the affidavit supporting the probable cause for issuing the search warrant. The search warrant in this case directed the police to search for, among other things, firearms, clothing, money, money bands, and bank bags. After conducting our review, we are satisfied that the search

10

warrant was issued upon probable cause that evidence of the robbery was likely to be found in the mobile home shared by Bruce and his brother Terry, including both Bruce and Terry's bedrooms. Therefore, we uphold the trial court's denial of the appellant's motion to suppress the items seized in the search as well.

Affirmed.

KINARD and GLOVER, JJ., agree.

*The Burns Law Firm, PLLC*, by: *James D. Burns* and *Jack D. Burns*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.